**STATE of Missouri, Plaintiff-Respondent,**

v.

**Roosevelt Willie JAMES, Defendant-Appellant.**

**No. 10704.**

Missouri Court of Appeals, Springfield District.

Feb. 6, 1978.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James A. DeReign, DeReign & DeReign, Caruthersville, for defendant-appellant.

Before BILLINGS, C. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Roosevelt Willie James was jury-convicted of second degree burglary and stealing "soda pop" from a laundromat in Hayti, Missouri. Having been charged under the

habitual criminal act, defendant was court-sentenced to consecutive prison terms of five years for burglary and two years for stealing.

Following arrest, defendant was said to have numerously initialed and twice-signed a bipartite "Voluntary Statement." The first section consisted of a printed form which detailed defendant's *Miranda* rights and his signed waiver thereof; the second segment was a six page confession of having committed the offenses of burglary and stealing with no mention of car theft. At the hearing on defendant's motion to suppress the statement, defendant testified that albeit two police officers threatened him with additional prosecution for auto theft if he did not sign the "Voluntary Statement," he refused to do so and, in fact, had never signed nor initialed the statement. The officers recounted that defendant had indeed initialed and signed the statement without any threats or promises having been made, and the officer who actually prepared the statement-confession subsequently testified that he did not know at the time that any possible car theft charge was involved. The motion to suppress was "overruled and denied."

Including defendant's confession, the state's trial-evidence showed the following. J. T. "Heavy" Ellis, Jr., owned a "deuce-and-a-quarter Buick," i. e., a series 225. On the night in question and while Heavy was comatose from over-imbibing, defendant purloined the keys to the Buick and, together with Elzo Walker, drove to the laundromat. Elzo broke the padlock on the laundromat's storage room door and was required to also kick it open upon finding the door doublelocked. This accomplished, defendant and Elzo each helped themselves to three cases of soda which they placed in the Buick ere departing for the Tin Top. Upon arrival, Elzo sold his cases to "Skin" while defendant was secreting his in nearby weeds. Thereafter, defendant and one L. C. "Blue Foot" Parker returned to the laundromat and relieved it of additional soda. They then sold "a couple" of cases at the Soul Shack to the in-resident proprietor, Sylvester "Slim" Pearson, for $3 cash and a $1 pint of wine. An hour later defendant and Blue Foot returned to the Soul Shack but were unsuccessful in making a second soda sale to Slim. In the interim, Heavy effected a recovery of sorts, discovered and reported to the police that his Buick was missing. Robert Bird informed Heavy of his sighting of the Buick at the Soul Shack and they proceeded to that establishment arriving coincidentally with defendant's and Blue Foot's second effort at selling soda. Espying Heavy and Bird, defendant and Blue Foot took leave. Heavy repossessed the Buick, drove it to the police station and surrendered the cases of soda which reposed therein.

Defendant took the witness stand twice.

The first time, and in substance, defendant declared absolute innocence. Defendant stated the police represented that Elzo had confessed, implicating him, and should he refuse to sign the confession he would be additionally charged with stealing Heavy's car. Contrary to defendant's testimony on the motion to suppress the statement wherein he denied signing it, defendant testified he signed the confession in response to the threat through fright and not because the statement was true. Defendant swore he had not been with Elzo at the laundromat, denied having gone to the Soul Shack on the night in question and insisted that Heavy had not seen him with the Buick. The defense rested.

While the court was in recess as instructions were being discussed and prepared, a most novel thing occurred. Defendant insisted on retaking the witness stand to recant his previous testimony. In spite of extensive cautioning, admonishing and explaining by counsel and court as to the possible consequences which could result from this intended course, defendant remained adamant and the jury was recalled. With the exception of defendant's insistence that he had only acted as lookout for the others and had not physically entered the laundromat, defendant's testimony during his second sojourn to the witness stand corroborated in all major respects the evidence given by the state's witnesses and contained in the confession, including an admission that he had taken Heavy's car without permission. Defendant's excuse

for not having so testified the first time was that "I was scared. I hadn't never been on the witness stand before." When asked by the prosecutor: "So then your statement [confession] here to the officer was true?" defendant answered, "Yes, sir."

The "Points Relied Upon" by defendant in this appeal read: "The trial court committed error in overruling defendant's motion to suppress and defendant's objection to the intruduction (sic) of defendant's statement [confession], where evidence was presented of a second offense at the time a confession was taken on the primary offense, and where there was conflicting testimony as to the use of the second offense as leverage in obtaining the confession, for the following reasons: (A) Although police officers were aware of the second offense, but denied threatening to charge the defendant with it to induce a statement, the implication was present that the police had the device and ability to improperly influence the defendant, which he alleges they did."

It is difficult to comprehend defendant's "points." The three authorities given in support thereof, two of which are miscited, are not helpful because they are not germane. By deciphering, we believe defendant is trying to say this: Because evidence of car theft was presented at the time the confession to burglary and stealing was obtained and because the testimony conflicted as to whether the car theft charge was employed to extract the confession, an implication arose that the police possessed the device and ability to improperly influence defendant to make the confession, as defendant said they did.

■ Several things appear wrong with the "points." First, it is assumed as a fact that the threat of a car theft charge was used to obtain the confession. This erroneous assumption ignores the denial by the officers that any threats were made. The trial court's obvious finding that the confession was voluntary and not induced by threats must stand, as defendant in this court may not insist that his testimony be accepted and the evidence of the state be wholly ignored. *State v. Garrett,* 510

S.W.2d 853, 855 (Mo.App.1974). Where the testimony, as here, conflicts as to the voluntariness vel non of the confession, its admission into evidence by the trial court is a matter of discretion. The evidence adduced at the hearing on the motion to suppress clearly supports the conclusion that defendant's confession was voluntary and, therefore, admissible. *State v. Blankenship,* 526 S.W.2d 78, 82[6, 7] (Mo.App.1975).

■ Another error in the "points" is the utter disregard of the fact that upon defendant's second appearance at trial he confirmed all the principal aspects of the state's evidence and acknowledged that his confession to the officers was true. To assert that this development created an unprecedented circumstance would be sheer hyperbole. Unsurprisingly, no reported opinion has surfaced which parallels the situation produced by defendant's in-court confession. But a resort to analogy leads to the principle that where a guilty plea is understandingly and voluntarily made, a subsequent claim that a prior confession was judicially inadmissible affords no basis for post-conviction relief under Rule 27.26, V.A.M.R. *McClure v. State,* 470 S.W.2d 548, 556–557[4] (Mo.1971); *Floyd v. State,* 518 S.W.2d 700, 703[8] (Mo.App.1975). Thus, by comparison, when defendant took the stand the second time of his own choice and insistence and confessed to all of the material elements of the crimes charged and admitted the contents of his confession were true, defendant's previous and present complaints anent the confession were vitiated. Otherwise put, when defendant confirmed to the jury his participation in the crimes charged and the truthfulness of his confession to the police, it would be amiss for us to undertake vindication of defendant via grounds raised on appeal which were negated and obliterated by the defendant's sworn court testimony.

The judgment is affirmed.

All concur.