**STATE of Missouri, Respondent,**

v.

**Lansing ROSS, Appellant.**

**No. 41527.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 2, 1980.
As Corrected Oct. 14, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Nov. 12, 1980.

---

on three counts of robbery, fifty years on one count of robbery to run concurrently and fifty years on the armed criminal action to run consecutive to the robbery convictions. Appellant raises sixteen points charging trial court error. His counsel has supplied this court with a voluminous brief that has exhaustively presented and analyzed each point relied on.

A brief recitation of the facts follows; more detailed accounts are incorporated in the opinion where relevant. On June 19, 1978, at approximately 5 p. m., the defendant, Lansing Ross and a co–defendant, Jerome White, entered the Wick Furniture Company at 3152 Cherokee Street in St. Louis, Missouri. After posing as customers and speaking with salesman Johnathan Lochmann for about ten minutes, White said he wanted to put down a deposit on a table. Salesman Lochmann went to a back office to obtain the necessary forms and when he returned, White drew a gun on Lochmann. White and the appellant forced Lochmann into the back of the store where two other employees Elizabeth Reinhardt and Shirley Bell were working. The appellant and his co- defendant proceeded to take the money out of the cash register and then tied up the three employees and robbed them of money on their person. Ross and White then left the store and the victims untied themselves and called the police. A week later, on June 26, several detectives for the St. Louis Police Department arrested Ross, his co-defendant White and another subject.

Springfield Baldwin, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Lew A. Kollias, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

WEIER, Judge.

This is an appeal from a conviction of four counts of robbery in the first degree and one count of armed criminal action. The appellant was sentenced to thirty years

I.

The appellant first contends that the trial court abused its discretion in overruling appellant's objection that the prosecutor had argued punishment in the closing statement to the jury without giving prior notice to the appellant by making a reference to punishment in the first half of his closing argument. During the first half of the State's closing argument, the prosecutor commented on certain instructions referring to the imposition of punishment by the jury. He then said: "I would like to defer

discussing those particular instructions . . . until the second half of my argument. . . ." Later, in the second half of his closing argument, the prosecutor vigorously pressed for severe sentences to be assessed against the defendant. He emphasized the dangerous disposition of the defendant by reiterating that he had urged his co–defendant to shoot Elizabeth Reinhardt when she had difficulty complying with the robbers' orders to lay on the floor, due to her arthritic condition.

The Missouri Supreme Court has laid down certain guidelines to be followed when the State wishes to argue the issue of punishment in a criminal case. Their substance is to ensure that the defense has an opportunity to rebut the State's argument for, presumably, severe punishment. They are set out in *State v. Peterson*, 423 S.W.2d 825 (Mo.1968):

> "The point will, of course, be ruled in each case on its own peculiar facts, including these issues: *whether a fair statement of the State's position has been made in some manner in its opening argument; whether any waiver has been made by the defendant*, either by his own counsel's argument or by the failure to object properly and to preserve the point; and, *lastly, a determination of the question of prejudice in view of all the circumstances.*" *Id.* at 831[4] (emphasis added).

This precept has been repeatedly reaffirmed. *See State v. Maxie*, 513 S.W.2d 338, 345–346[17] (Mo.1974); *State v. Wadlow*, 450 S.W.2d 200, 201[1] (Mo.1970).

Our review of the record in the instant case reveals that defense counsel was put on notice of the State's intent to argue punishment to the jury. Our courts have held it is not required that the prosecutor make a reference to a particular number of years in the opening half of his closing argument to ensure that the State may thereafter argue punishment in the closing argument. For example, the conviction and sentencing of a defendant was upheld in *State v. Brown*, 480 S.W.2d 839 (Mo.1972), where in the first half of closing argument the prosecutor briefly outlined the case and then said: "And I later on will come back, at the conclusion, and ask for a penalty sufficient to the crime and ask that this man be sent to the penitentiary for a number of years. . . ." *Id.* at 839–40. In the final portion of his closing argument the prosecutor asked that a twenty year sentence to be assessed by the jury. The Supreme Court held the prosecutor had put the defense on notice of his intention to argue punishment to the jury. Such is the situation before us now.

Defense counsel in the present case not only tacitly admitted he was put on notice that the prosecutor was to argue punishment but, in fact, waived his chance to make a rebuttal. In his closing argument, defense counsel commented to the jury: "There's some question about punishment and so on, but the point is you can't assess punishment against someone if they haven't been shown to be guilty beyond a reasonable doubt. We're not even going to talk about that." By this statement defense counsel clearly acknowledged notice of the State's intention to argue punishment and, in addition, explicitly waived his right of rebuttal. We find this point of appeal without merit.

## II.

■ Appellant presses forward the claim that on several occasions prejudicial error was repeatedly injected into the trial court proceedings by means of references to other crimes for which the defendant was not on trial.[1]

We first consider the allegedly prejudicial testimony of one of the officers who effectuated the arrest of the defendant. At the trial Detective Daniel Stewart testified that on June 26 he and several other detectives surrounded the residence where the suspects had been located and notified the occupants that the police were outside. Immediately afterwards Jerome White kicked out an apartment screen and then threw

---

1. Specifically, appellant's points on appeal II, V, VI, VII, XI are grouped in this discussion.

out a bag of jewelry which landed on the ground. Defense counsel approached the bench and objected to the reply as evidence of other crimes not charged. The trial court overruled the defendant's objection and appellant now claims prejudicial error.

As a preface to our discussion of this matter, we note that the prosecutor told the trial court at the bench conference immediately after defense counsel objected that the officer's response about the jewelry was volunteered and caught him "completely by surprise." The court told the prosecutor that he did not necessarily view the reference to the incident as evidence of other crimes, but that the prosecutor was not to pursue it any further. The prosecutor complied with the trial court's directive.

Appellant correctly details a fundamental evidentiary tenet—that evidence introduced in a criminal trial must only relate to the crime for which a defendant is then on trial. In most instances evidence of other crimes are not relevant to the determination of whether the defendant did or did not commit the offense presently before the trial court. "In order to invoke the rule of exclusion there must be evidence that *the defendant* has committed, or has been accused of, charged with, convicted of, or been definitely associated with, another crime or crimes." *State v. Jones*, 523 S.W.2d 152, 155[6] (Mo.App.1975) (emphasis in original).

Bearing this in mind, appellant's contention fails for at least two reasons. First, Officer Stewart's testimony did not refer to any action of the defendant; instead it detailed the aborted escape attempt and intertwined activity of a co–inhabitant of the surrounded house. Secondly the action, throwing out a bag of jewelry, had no relation to the crime for which defendant was being tried. Testimony of the victims of the crime details that only cash from the register and billfolds or money of the victims were taken, there being no reflection in the trial testimony that the robbers seized any jewelry. Thus, the defendant was not connected with White's actions nor was the activity a crime, nor were the ac-

tor's actions even alleged to be criminal. Appellant's copious, cited authority concerns evidence of other crimes and so is inapposite to the instant case. Because there is no evidence of other unrelated crimes, the State need not show that its introduction was "harmless error beyond a reasonable doubt." *State v. Wright*, 582 S.W.2d 275, 278 (Mo. banc 1979). This point of error is denied.

### III.

■ Appellant next presses forward the argument that the trial court erred in refusing to grant a mistrial after one of the officers, Patrolman Dickens, who had arrested the defendant, testified that he was assigned to the narcotics division. Actually, there was a parade of prosecution witnesses who were officers that assisted in the apprehension of the defendant. Officer Stewart previously testified that four officers, one of them Dickens from the narcotics division, assisted in the arrest of the appellant. No objection to this reference was voiced by defense counsel. Officer Dickens was also called to the stand and he identified himself as assigned to the narcotics division and detailed his participation in the arrest of the appellant. Only after several other questions were asked of Officer Dickens did defense counsel lodge an objection to the policeman's identification of what division he worked in. Appellant proceeds to argue that by having the officer identify himself as assigned to the narcotics division there was an improper interjection into the trial proceedings of evidence of other crimes.

We are unpersuaded by this line of reasoning, which fails for the same reason as the prior point. It is true that the guilt of the defendant must not be proven through connection with other crimes. Other criminal actions are in most cases simply not relevant to the defendant's action in the case at bar. However impermissible such references are, clearly what is prohibited is a reference to other crimes. The police officer's identification of who he is and where he works does not interject into the

proceedings that the defendant was guilty of a narcotics offense, thus tainting his right to be proven guilty without reference to other prior criminal acts. In addition, the evidence does not reveal that these officers, assigned to various criminal investigation divisions, were, in fact, investigating the defendant on a wide variety of other crimes. Rather, they merely appear to have assisted in the apprehension of the defendant. Surely there is no merit to a contention that only officers assigned to the robbery division may arrest a robbery suspect.

Appellant's cited authority deals with evidentiary maxims which are not applicable to the facts in the instant case. The common thread linking all of appellant's authority is that evidence—either demonstrative or testimonial—of other crimes cannot be allowed into the trial proceedings; if this occurs the result is often a finding of prejudicial error warranting a reversal. *See State v. Wright, supra* at 277[1]; *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954); *State v. Charles,* 572 S.W.2d 193, 196–199[3–5] (Mo.App.1978); *State v. Walker,* 490 S.W.2d 332, 333[2] (Mo.App.1973). The instant case clearly stands apart from cited authority for it does not concern the admission of other crimes for which the defendant was not on trial. This point is denied.

being connected with a homicide. No testimony was elicited which stated that the defendant was convicted of a homicide, was indicted for a homicide, was being investigated in conjunction with a homicide, was arrested for a homicide, or was even suspected of being involved in a homicide. The line of questioning of the detective by the prosecutor in no way concerned a reference to a homicide; instead the testimony reveals that the officer merely detailed that after a lineup, the defendant was being notified of his constitutional rights and then questioned concerning the robbery. Again, appellant's cited authority in support of his claim of prejudicial error reveals cases in which evidence of other crimes or arrests were admitted. When defense counsel objected and requested a mistrial, the trial court refused such a request, but did sustain the objection to the question and directed the jury to disregard the question and the officer's response. "The declaration of a mistrial is a drastic remedy and should not be resorted to except in those extraordinary situations where prejudice cannot be removed by other means." *State v. Charles, supra* at 611[3]. Such a remedy is within the discretion of the trial court, *State v. Charles, supra* at 611[4]; and bearing this in mind, we do not view this extremely attenuated link to other crimes as necessitating a reversal. This point is denied.

### IV.

■ Appellant next attempts to prove trial court error in failing to declare a mistrial when Officer Stewart's testimony as to the location of an interrogation of the defendant prejudicially referred to other crimes committed. During the course of the officer's detailing his interrogation of the defendant, Detective Stewart mentioned that this was done in a room in the homicide section. Defense counsel objected to this as an impermissible reference to other crimes, asking for a mistrial. We find this point of appeal lacking in merit for much the same reason as the point previously raised. Again, there is no direct reference in the trial record to defendant

### V.

■ Appellant's last two contentions of error dealing with an asserted prejudicial introduction of other crimes are also fatally defective. Appellant's point concerns the allegedly erroneous elicitation from Officer Dickens (an arresting officer) by the prosecutor in the following exchange.

"Q. Did you have some additional input into this investigation other than what you've just testified to and to this particular report Mr. Bell asked about?

A. That's it.

Q. Sir?

A. That was it. They conducted a second line–up sometime—"

Defense counsel objected and during the course of a conference at the bench, defense counsel appeared to shift his grounds for objection from hearsay evidence to one claiming prejudicial inclusion of evidence of other crimes. Defense counsel asked that this testimony concerning a second lineup be stricken. The trial court sustained this request but overruled an additional motion to grant a mistrial.

Our standard of review has been detailed previously. Such matters as a grant of a mistrial are within a trial court's discretion and its determination will not be overturned absent a showing of abuse. The reference to a second lineup was an unsolicited reply to a question by the prosecutor and the trial judge cured any possible prejudicial effect by striking the testimony. Additionally, we are not convinced that the reference to a second lineup was evidence of another crime. The presence of the defendant in a second lineup could have occurred for a variety of reasons, e. g., the two victims and witnesses to the robbery who attempted to identify the defendant and failed the first time were asked to view the defendant again, or the defendant was being used to fill in another police station lineup in conjunction with a criminal identification procedure for a crime in which he had no part, nor was he arrested, investigated or under suspicion of being involved in. We rule this point against appellant. Our discussion here concerns appellant's "point II." We also dispose of "point VII" in his brief which is almost a verbatim, albeit truncated, repetition of "point II," in this discussion. The issue on appeal is the same, the authority cited by appellant is the same, the argument is the same, and our conclusion as to its merits is the same. Likewise this point is denied.

### VI.

■ The next contention of error centers on the submission to the jury of verdict–directing instructions which included provisions for punishment. Appellant reasons that since the crimes which the defendant was found guilty of committing took place on June 19, 1978, under the then applicable section of the Missouri criminal code, the trial judge should have sentenced the defendant because he was indicted under the Second Offender Act.[2] The jury instead was allowed to sentence the defendant and this "error" was so prejudicial, the defendant argues, that a mistrial should have been granted.

Our careful examination of the authority cited by the appellant and of other case and statutory law, when read against the backdrop of the record in the instant case, convinces us that there was no trial court error. The indictment of the defendant did contain a charge that the defendant was convicted and sentenced for a prior felony. However, the trial court chose not to submit instructions to the jury which would have limited them to a deliberation on the guilt of the defendant for the crime he was then on trial. And the State presented no evidence to the judge that the defendant had been convicted and sentenced for a prior felony. This decision of whether to proceed with a prosecution under the Second Offender Act is a discretionary matter lodged with the prosecutor. *Wilwording v. State*, 438 S.W.2d 447, 449[2] (Mo. 1969). Here the record reflects the fact that the jury was unaware of the second offender status of the defendant, and there has been no showing of prejudice to the defendant resulting from a failure to be prosecuted under the Act.

### VII.

■ Appellant next asserts that the trial court erred in refusing to grant a mistrial when the prosecutor allegedly made an impermissible comment on the defendant's failure to testify on his own behalf. On direct examination of one of the officers who had arrested the defendant, the prosecution asked whether the defendant had at that time been read his rights. The officer replied that he had been so informed, at which time defense counsel objected on the

**2.** Then § 556.280, RSMo 1969, now § 558.016, RSMo 1978.

grounds of relevancy and also claimed an impermissible comment on the defendant's fifth amendment privilege against self-incrimination. When the court asked the prosecution to explain the relevancy of the question, the State replied that the defendant had made a statement (already in evidence) to officers several days later and that the State wanted to show that at the time he made the statement he had been advised of his rights. At a bench conference defense counsel asked for a mistrial, claiming that the prosecution had just told the jury that the defendant had not made any statement until three days after his arrest.

First, we note that testimony concerning the defendant being informed of his constitutional rights at the time of his arrest is not an impermissible commentary on defendant's fifth amendment privilege against self-incrimination. *State v. Moore*, 546 S.W.2d 10, 14[8] (Mo.App.1976). Second, the prosecution did not say that the defendant waited three days to make any statement. Rather, there was a particular statement made by the defendant which came three days after his arrest and the defendant was also advised, prior to this exposition, of certain constitutional rights which he possessed. When the prosecution attempted to explain the relevancy of his prior question, at the request of the court, he did not say that the defendant maintained a silence for three days, only to later speak to the police. This point is ruled against appellant.

## VIII.

Appellant charges that the trial court erred in admitting certain statements made to the police during an interrogation because the statements were not voluntary and because they were exculpatory and they were inadmissible as irrelevant unless the defendant had elected to testify in his own behalf. This arose during the course of an interrogation by the police. The defendant was asked if he knew the location of Wick Furniture Store (the location of the robbery). Defendant replied he did not.

The officer then told the defendant the location of the store to which the defendant retorted, "I've never been in the Wick's Furniture Store on Cherokee." At trial this statement was introduced into evidence, along with a fingerprint lifted off a glass case from the furniture store which matched defendant's fingerprints. Clearly, appellant's exculpatory statement was a falsehood.

We deal first with the issue of voluntariness. In support of his contention that the statements he made to the interrogating officers were not voluntary, appellant alleges that he was not advised of his *Miranda* rights and that there was not a showing of an affirmative waiver of these rights. The trial court held a suppression hearing before the case-in-chief was presented to determine the admissibility of several statements made by the defendant to the police. The record reflects that Detective Bates advised the defendant of his constitutional rights when he was arrested on the night of June 26, 1978. This fact appears uncontroverted. During the 29th of June appellant was twice interrogated about his involvement in the robbery of the Wick Store. Here there is a conflict in the testimony of the two officers immediately involved in the interrogation. Officer Sims testified that Officer Stewart had advised the defendant of his constitutional rights prior to their interrogation in the afternoon of the 29th of June. Officer Stewart also testified that he read defendant his "rights" prior to his interrogation on the night of the 29th. Further, testimony at the suppression hearing from Officer Sims indicates he felt that the defendant was not advised of his rights prior to the first time he was interrogated. However, both officers agree that before he was interrogated the second time on the 29th—the interview at which the exculpatory statements were elicited—the defendant was read his rights. Thus, the evidence adduced at the suppression hearing shows that there was a split of opinion between the two officers as to whether the defendant was advised of his rights prior to the first interrogation during the 29th, but that both are agreed that he was advised before

the second interrogation. Nothing in the record contradicts this testimony. The appellant never took the stand to offer counter–weighing testimony. We find there is clear proof that the defendant was advised of his constitutional rights.[4]

Evidence at the suppression hearing also supports the assertion that the defendant voluntarily waived his *Miranda* rights, specifically to a right to have a lawyer present at an interrogation and to remain silent during attempted questioning. On the night that he was arrested defendant was advised of his rights and when defendant indicated he did not wish to talk to officers, this request was honored. Two days later, officers again attempted to interrogate defendant, at which time he made the exculpatory statements. The later attempt to question the defendant was not in violation of his constitutional rights for it had been repeatedly held that an assertion of his right to silence does not forever preclude police interrogation at a later time. *State v. Jackson*, 555 S.W.2d 355, 358[4] (Mo.App. 1977). As the United States Supreme Court stated in a case which sought to clarify *Miranda v. Arizona* :

"At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can be sensibly read to create a *per se* proscription of indefinite duration

upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." *Michigan v. Mosley*, 423 U.S. 96, 102–103, 96 S.Ct. 321, 325–326, 46 L.Ed.2d 313 (1976).

In the instant case officers' testimony differs as to whether the defendant voluntarily waived his right to remain silent. Officer Sims stated that the defendant did not wish to talk to them at the first interrogation on June 29, but Officer Stewart rejected this account, instead testifying that the defendant merely denied knowledge of the robbery weapon. When the second interrogation of the defendant on June 29 was recounted, Officer Sims and Officer Stewart again differed as to whether the defendant had indicated a desire not to answer any questions. Thereafter during the second interrogation, the defendant made the exculpatory statements. When faced with conflicting testimony as to a factual matter of this nature, the trial court weighed all relevant testimony, looking at the totality of circumstances surrounding the recitation of exculpatory statements. Where evidence is conflicting, the admissibility of a confession is in the discretion of the trial court. *State v. James*, 562 S.W.2d 185, 187[2] (Mo.App.1978). We find that the trial court properly determined that the State had made a prima facie case of voluntariness of testimony and so correctly held the evidence admissible.

■ A defendant may waive his right to remain silent and to having a lawyer present during questioning without any explicit, affirmative statement. The Missouri Court of Appeals held as such in *State v.*

---

**4.** Appellant appears to seize the failure of the officers and the trial court to refer at all times to the *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) as evidence of a failure to prove that these constitutionally mandated rights were read to the defendant. It is true that at various times the *Miranda* warnings were referred to as "constitutional rights" or as merely "rights." We believe that in the context in which the testimony was brought forth (a suppression hearing on the question of the advisement of defendant of

his rights and voluntariness of the waiver) such phrases as "constitutional rights" and "advised him of his rights" are clearly references to *Miranda v. Arizona* warnings. We note that defense counsel himself, on cross–examination of the State's witnesses, referred to the *Miranda* warnings merely as "rights." Such references to "*Miranda* warnings," "*Miranda* rights," "constitutional rights" and "advised him of his rights" are now commonplace parlance all referring to the constitutional dictates of *Miranda v. Arizona*.

*Keever*, 569 S.W.2d 400, 403[6] (Mo.App. 1978), and the United States Supreme Court has implicitly validated this interpretation of the scope of *Miranda* rights waiver when it ruled:

> "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Again, the trial court heard the evidence produced by the State and the cross–examination of the witness by the defense counsel. The record does not reflect any testimony which would indicate that the trial court's holding that the defendant's waiver of his rights were not knowingly and intelligently made was in error.

■ Appellant's allegation that the exculpatory statement was induced by the imposition of threats, coercion or promises is totally unsupported by any evidence in the record and we find this allegation to be without merit. If defendant contends there were special circumstances which resulted in an involuntary confession, it is incumbent on him to present evidence supporting the contention. Failure to do so will result in the admission of the confession. *State v. Crowley*, 571 S.W.2d 460, 464[10] (Mo.App. 1978). The same standard is to be applied on the voluntariness of exculpatory statements. No evidence of impropriety by police was offered by defendant and bare allegations unsupported by evidence in the record are without merit.

## IX.

■ Appellant's next point concerns the admissibility of three exculpatory statements used by the State at trial. Appellant asserts that such statements were irrelevant and so not properly admitted. We disagree. Substantial case law supports the evidentiary precept that exculpatory statements, when proven false, evidence a consciousness of guilt and so bear directly on the issue of innocence before the trier of fact. *State v. Zerban*, 412 S.W.2d 397, 399–400[2] (Mo.1967); *State v. Bridges*, 349 S.W.2d 214, 216[2] (Mo.1961); *State v. Johnson*, 539 S.W.2d 493, 507[22] (Mo.App.1976). In this case defendant's comment that he had not even been to the Wick Furniture Store, when coupled with the submission into evidence of defendant's fingerprint taken from a countertop, was evidence of consciousness of guilt and therefore is properly admissible.

## X.

■ We consider the charge that the trial court erred in overruling appellant's objection to a victim's testimony concerning his identification of the defendant at a lineup. At the trial Mr. Johnathan Lochmann was handed a picture of a lineup in which the robbery suspects were placed which he viewed at police headquarters. The witness testified that the picture was a fair and accurate representation of the lineup. The photo was marked as an exhibit and received into evidence. Thereafter, the witness was asked whether, when he had viewed the lineup, he was able to identify anyone in that picture. He replied that among the lineup participants were the defendant on trial and his co–participant Jerome White. At this point defense counsel objected that the witness' testimony to an earlier identification of the defendant at the lineup by this witness was an attempt to bolster this testimony by allowing him to confirm a prior consistent statement. The objection was overruled.

The law on this point is quite clear and this alleged error can be summarily disposed of. *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972) held that "[a]s an identifying witness, his testimony concerning his extrajudicial identification of defendant by means of a photograph as well as by selecting defendant out of a lineup is admissible." *Id.* at 62[12]. What is not permissible, in the absence of any impeach-

ment of an identifying witness' testimony as evidence of a prior inconsistent statement of the identifying witness, is the testimony by an observer to the identification that the witness had correctly selected the defendant. Such testimony is both hearsay and an unnecessary bolstering of the witness' identification. *State v. Brown*, 528 S.W.2d 503, 506[7] (Mo.App.1975). This point is denied.

## XI.

Appellant next submits that the trial court erred in overruling defendant's pre–trial motion to suppress a lineup identification because of its impermissible suggestiveness and conduciveness to a mistaken identification. This contention has two subpoints: (1) that the individuals in the lineup were dissimilar in appearance to the defendant, and (2) that the witness had been shown unnecessarily suggestive photographs before the lineup. For the following facts and reasons we find that the admission of the identification testimony was not error.

The appellant claims that before the lineup was conducted the identifying witness was shown a series of eleven photos, one of which was the defendant. Several of the men in the photos had beards but one of the photos which showed a clean–shaven man was of the defendant. The witness was unable to pick out the defendant. Several days later when the witness viewed a lineup with the defendant (who was then clean–shaven) in it, the defendant was positively identified. Appellant claims that the picture of him clean–shaven made him familiar to the witness several days later in the lineup, when he appeared clean–shaven. However, a closer examination of the record uncovers additional, relevant facts. First, the witness described the robbers as wearing facial hair and a mustache. And the hair style of the defendant in the lineup (an "Afro" style) differed from the defendant's appearance at the time of the robbery (braided). This ability of the witness to identify the defendant at the lineup, despite the different

hair style and change in facial hair appearance, lends support to the certainty with which defendant was identified at the lineup and later at trial. In addition, we note that the witness had viewed the defendant at the robbery scene for over ten minutes face to face while they discussed the purchase of a desk. This was more than ample time for the witness to familiarize himself with the defendant. Proof of a source of identification independent of the photographs and lineup is enough to overcome a claim of suggestiveness in the identification process. *State v. Macon*, 547 S.W.2d 507, 513[2] (Mo.App.1977)

## XII.

Appellant next contends that the trial court erred in failing to grant a motion for a judgment of acquittal because the State did not meet its burden of proving guilt beyond a reasonable doubt. More specifically, appellant submits that the defendant's identity as a perpetrator of the crime was not established except through the use of evidence he urges to be inadmissible. Because we have just held this evidence admissible, we implicitly disagree with the contention.

## XIII.

Defendant next contends that the trial court erred when it entered a judgment of conviction for armed criminal action under Count V of the indictment. Counts I through IV concerned the offense of robbery in the first degree. Count V charged the defendant with committing a felony "with or through the use, assistance or aid of a dangerous and deadly weapon." At the time of entering the judgment on April 12, 1979, under the statutes that then existed, the State could have prosecuted defendant for both armed criminal action and an underlying felony committed with a weapon. Thereafter the Missouri Supreme Court interpreted convictions of robbery in the first degree with a dangerous and deadly weapon and armed criminal action as being in violation of the Double Jeopardy Clause of the Fifth and Fourteenth Amend-

ments of the United States Constitution. *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980). But in *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 65 L.Ed.2d 820 (1980), the United States Supreme Court vacated the decision of the Missouri Supreme Court and remanded the case for reconsideration in the light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Then in *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980), the Missouri Supreme Court re-examined the intent of the Missouri General Assembly in enacting § 559.-225, RSMo Supp.1976, the armed criminal action statute. The opinion of the Missouri Court determined that the General Assembly had in clear and unequivocal terms expressed in this section of the law "its intent to authorize conviction and punishment for armed criminal action and for the underlying felony." In other words the statute provided the State may punish not only for the underlying felony but also for the same felony a second time by reason of it having been committed through the use of a dangerous and deadly weapon. With this interpretation, the court decided that armed criminal action and the underlying felony used to prove the armed criminal action which in this case was robbery first degree were the same offense for double jeopardy purposes under the same evidence test. A conviction would result in punishing a person twice for the same offense. The point raised here therefore is well taken and defendant must be discharged from his conviction of armed criminal action.

### XIV.

■ Appellant's last point is a contention that the trial court erred when it refused to grant the motion for a new trial because there was such an accumulation of errors that the defendant was deprived of his right to a fair trial under the United States and Missouri Constitutions. Except for our holding on the propriety of the armed criminal action conviction as a violation of the Double Jeopardy Clause of the United States Constitution we have reviewed the points on appeal raised by the defendant and have failed to find any trial court error, either prejudicial or harmless. If the points raised do not sustain the contentions of error individually, when taken collectively, they cannot constitute error. *State v. Lay*, 427 S.W.2d 394, 403–404[13] (Mo.1968).

The judgment and sentences of the trial court on the four counts of robbery first degree are affirmed. That portion of the judgment finding the defendant guilty of armed criminal action and imposing the sentence thereon is reversed.

STEWART, P. J., and SNYDER, J., concur.