STATE of Missouri,
Plaintiff–Respondent,

v.

Dewayne Allen MANIER,
Defendant–Appellant.

Dewayne Allen MANIER,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16092, 16465.

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 1990.

Judith C. LaRose, Columbia, Elizabeth A. Bock, Asst. Public Defender, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

A jury found defendant Dewayne Manier guilty of selling marijuana, § 195.020(1),[1] and he was sentenced to ten years' imprisonment. Defendant appeals, and that appeal is Case No. 16092. After the jury trial, defendant filed a motion, under Rule 29.15, seeking relief from the conviction. That motion was denied without evidentiary hearing. Defendant appeals from that denial, and that appeal is Case No. 16465. The appeals have been consolidated and will be dealt with separately in this opinion.

No. 16092

■ Defendant's first point is that the trial court erred in denying his request for a mistrial based on certain remarks made by the prosecutor in his opening statement and in refusing to instruct the jury to disregard those remarks because "the jury heard the incriminating statement and was allowed to consider this highly prejudicial statement." The prosecutor's remarks and the trial court's rulings will be considered in light of the evidence adduced at the trial.

During its case-in-chief, the state presented four witnesses, three of whom

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

were officers of the Springfield Police Department. The fourth witness was a forensic chemist who identified the substance sold by the defendant as marijuana.

Officer Don Fuhr testified that on October 28, 1986, he was on patrol with fellow officers Steve Ijames and Tom Dempsey. The three men were working undercover and were appropriately attired. They were riding in an "undercover conversion van" which Ijames was driving. Fuhr was seated in the front passenger seat and Dempsey was seated behind Fuhr.

The officers drove to Smith Park in Springfield where they saw a group of people. Ijames stopped the vehicle. Defendant came to the window on the passenger side and talked with the officers. It was "after dark, early evening."

Fuhr testified that the defendant said that "cops sometimes come in the park and try to get us to sell drugs to them." Defendant asked the officers to turn on the dome light inside the van so he could see if he recognized any of them. The dome light was turned on and then turned off. Defendant asked another man to look at the officers and the dome light was turned on again for that purpose. Fuhr said that he had the opportunity to view the defendant at the window for several minutes and conversed with him.

Ijames said to the defendant, "I did not say anything about drugs. You are the first one that mentioned anything about drugs." Defendant said, "Well, what do you want?" Ijames said, "We could use some green." Green is a "street term" for marijuana. Defendant told the officers he knew where marijuana could be obtained and that it would cost $45. Someone yelled at the defendant, "Don't forget your three-two," meaning a .32 caliber hand gun. Defendant went to a car and picked up something and put it in his pants. He then returned to the van and got in the back seat with officer Dempsey.

The quartet, under direction of defendant, drove to a location in southwest Springfield, "a long way" from Smith Park. Defendant left the van, walked to a nearby house, obtained marijuana, returned to the van, and sold the marijuana to Fuhr for $45.

After the group left the place where the marijuana was obtained, defendant told the officers he wanted to smoke some of the marijuana. Fuhr told defendant they didn't have any "rolling papers" to make a cigarette. Defendant said he would buy the paper so they stopped at a convenience store in Springfield.

Defendant entered the store and bought some cigarette paper. While defendant was doing this, Fuhr took a "scam joint," which is an imitation marijuana cigarette, out of Fuhr's wallet and concealed it under his left leg. When defendant returned with the cigarette paper, Fuhr rolled a cigarette and substituted the scam joint for it. The officers and defendant smoked the scam joint in the van.

When the officers complained about the quality of the scam joint, defendant asked to be let out of the van. Ijames stopped the van and defendant was permitted to leave.

Officer Fuhr testified that "during the drive itself" he was with defendant for 30 or 40 minutes. He spoke with the defendant for two or three minutes at the passenger window. He also testified that he had seen the defendant on other occasions. On one such occasion, several weeks after the sale, Fuhr was driving his personal vehicle and defendant crossed the street in front of him. Fuhr also testified that "about two months ago" he saw the defendant at an apartment complex but was afraid that defendant would recognize him so he stepped out of defendant's view.

Officer Ijames testified to the events of October 28. He said he had an opportunity to see defendant and observed him very closely. He also said, "I have seen [defendant] on numerous other occasions."

Officer Dempsey testified that on October 28 he had the opportunity to observe defendant and that defendant sat next to him during the ride in the van. Officer Dempsey also testified that he saw the defendant the next night, October 29, when Dempsey and Fuhr were on the way to the

house of a judge to get a search warrant for the house where the defendant got the marijuana. Dempsey said, "As we passed the car wash, I saw Dewayne Manier waving at us."

Defendant, the sole defense witness, testified that his name was Dewayne Manier and that he was also known as Dewayne McGee. He said, "I have two last names because my mother and my father weren't married when they had me." The defendant testified that he did not know where he was on October 28, 1986, and that he did not sell marijuana to anyone on that date.

During the prosecutor's opening statement the following occurred:

"[Prosecutor]: [Officer Fuhr] will also testify that in August or September of 1988 that he had an occasion to talk to Dewayne Manier. He asked him his name and Dewayne replied Dewayne McGee. Officer Fuhr will tell you that he told him, 'I know who you are, I bought drugs off you.' He'll testify that Dewayne Manier insisted that he was Dewayne McGee and finally replied, 'I don't look anything now like I did then.'

[Defense counsel]: Your Honor, may we approach the bench?"

Outside the hearing of the jury a colloquy took place among the court and both attorneys. Defense counsel moved for a mistrial on the ground that "this statement he just stated was not disclosed." Defense counsel also stated that the statement was not disclosed in any police reports and that she had talked to officer Fuhr and asked for any statements that defendant may have made and "his response was 'none.'" The trial court denied the motion for mistrial. Defense counsel then moved that the jury be instructed to "disregard this statement because the state has not disclosed the statement." The court denied the request.

The trial resumed and the prosecutor, in completing his opening statement, made no further reference to the challenged Fuhr-Manier conversation. Defense counsel waived opening statement and the court instructed the prosecutor to present his evidence.

Officer Fuhr was called as the state's first witness. Before his testimony began, a recess was taken at the request of defense counsel.

During the recess, outside the hearing of the jury, defense counsel moved to suppress any oral statement made by the defendant to officer Fuhr in August or September 1988. Officer Fuhr testified, in chambers, with regard to the circumstances surrounding the challenged conversation. Defense counsel said, "I am asking the court to suppress the statement that 'I don't look nothin' now like I did then.'" The court stated that he sustained the motion "as to that one portion only. But if rebuttal is offered it may be admissible." Defense counsel renewed her request for a mistrial, and that request was denied. Defense counsel then requested "that the jury be brought in and instructed to disregard such statement and the prosecutor be admonished." The court said, "Don't you think that would be calling attention to it?" Defense counsel responded, "Well, Your Honor, to protect my client I must ask that this jury be requested to disregard the statement. That is something I have to do. It's up to the court, naturally, what it wants to do." The court denied the request.

The only information communicated to the jury was the prosecutor's statement that, almost two years after the sale, officer Fuhr had a conversation with defendant in which defendant stated that his name was Dewayne McGee. In that conversation, Fuhr referred to having "bought drugs off you." Fuhr also quoted defendant as saying he was Dewayne McGee and that "I don't look anything now like I did then."

There was no evidence that defendant made any sale to Fuhr or the other two officers other than the marijuana sale on October 28, 1986. Although the statement attributed by Fuhr to defendant—as stated by the prosecutor—"I don't look anything now like I did then," was incriminating, its effect, on this record, was harmless. All three officers testified that they participated in the purchase of the marijuana

from defendant, a transaction that lasted for the better part of an hour. Any later statement, purporting to be an admission by defendant that he had participated in the sale, added nothing to their direct testimony concerning defendant's participation. The trial court properly suppressed any evidence of the statement but felt it was unwise to underline the matter by instructing the jury to disregard it. This court holds that the defendant was not prejudiced by the improper comment of the prosecutor or by the rulings of the trial court with respect to that comment. Defendant's first point has no merit.

▇ Defendant's second point is that the trial court erred in permitting the prosecutor, over the defendant's objection, to argue for a sentence of eight years' imprisonment in his final argument when he did not recommend a specific punishment in his first argument.

During his first argument the prosecutor said:

"The range of punishment in this case, we discussed this in voir dire, the minimum is five years and the maximum is up to life imprisonment.... Now, I'll have one more opportunity to speak with you and at that time I will discuss the punishment the state is going to recommend. I ask you to keep in mind that the minimum is five years in prison and up to life in prison.... Again I'll have just one more opportunity to speak with you and at that time I will discuss the range of punishment. Your job in this case—this evidence is clear beyond a reasonable doubt that the defendant is guilty of the offense he's been charged with, beyond a reasonable doubt he's guilty. Your job now is to decide the range of punishment that you will assess. And I will discuss that with you when I come back to speak with you again...."

At the conclusion of that argument, the following occurred:

"[Defense counsel]: I want to make this record now. The state said three times it's going to come back in the closing half of its argument and ask for a specific term of years and I object to him

doing that. That's supposed to be done during the opening part so that I'll have a chance to respond to it.

THE COURT: [The prosecutor] did mention from five to life, didn't he?

[Defense counsel]: He mentioned the range of punishment and then said he was going to ask for a specific punishment. It's not fair for him to come back in the closing part of his argument and ask for a life sentence when I won't have any chance to respond.

THE COURT: The objection is denied, overruled." During her argument, defense counsel said:

"Now, the state will talk to you about punishment. I want to talk to you briefly about punishment, although I have (sic) no way infer or admit any type of guilt in this case. The legislature has mandated the punishment, five years to life in prison. You're reasonable people and I think you understand the legislature would not send anyone to the penitentiary for life for an eighth ounce of marijuana."

In his final argument the prosecutor said: "[W]e ask you to return a verdict of guilty against the defendant and sentence him to eight years in the penitentiary."

The jury did not follow the prosecutor's recommendation. In its verdict it assessed the punishment at ten years' imprisonment.

"In *Shaw v. Terminal Railroad Ass'n of St. Louis, Mo.*, 344 S.W.2d 32, 37, this court said: 'Counsel having the affirmative will be held to the requirement of fairly stating his essential points in the opening argument, at least to the extent that the defendant may fairly answer them; and a failure to require this will ordinarily constitute error, if the point has been properly raised at the time and preserved.' In *State v. Peterson*, Mo., 423 S.W.2d 825, this court, in reversing and remanding, held the rule stated in Shaw, supra, to be applicable to criminal cases."

*State v. Fair*, 467 S.W.2d 938, 940–41 (Mo. banc 1971).

In *State v. Brown*, 480 S.W.2d 839 (Mo. 1972), the prosecutor, in his first argument,

told the jury that the case was a serious one. He also said, "I later on will come back, at the conclusion, and ask for a penalty sufficient to the crime and ask that this man be sent to the penitentiary for a number of years, as he should be...." Defense counsel, in final argument, said, "But it is possible for a defendant to lose a case, and this is an extremely serious crime punishment-wise. It starts at two years. That's the least sentence you could give. There is no maximum to it at all. It just goes on up clear to life." In final argument the prosecutor said, "[N]o one hears how serious it is until you say—until you say, Twenty years!" Defendant objected to the prosecutor's last statement "because he did not refer to it in the first half." That objection was overruled and a motion for a mistrial was denied.

Holding that the prosecutor's argument did not constitute reversible · error, the court said at 840:

> "The practical difficulty with appellant's position is that the prosecuting attorney did not wait until final argument to mention punishment, but did make reference to the matter of punishment in his opening argument. By such reference, he gave notice of his intention to argue further on the matter of punishment in closing argument. That the State's opening argument was such notice is shown by the defense argument in which counsel, himself, recited the range of punishment to show the severe effect on his client of a conviction, following the main thrust of his argument which was aimed at acquittal."

Similarly, in *State v. Ross*, 606 S.W.2d 416 (Mo.App.1980), the prosecutor, in his first argument, mentioned instructions concerning punishment and then said, "I would like to defer discussing those particular instructions ... until the second half of my argument." In his final argument the prosecutor "vigorously pressed for severe sentences to be assessed against the defendant." Citing *Brown*, the court said, at 419:

> "Our review of the record in the instant case reveals that defense counsel

was put on notice of the State's intent to argue punishment to the jury. Our courts have held it is not required that the prosecutor make a reference to a particular number of years in the opening half of his closing argument to ensure that the State may thereafter argue punishment in the closing argument."

The court also said, in *Ross*, that defense counsel, by alluding to the matter of punishment in his closing argument, and saying, "We're not even going to talk about that," had admitted that he was put on notice that the prosecutor was to argue punishment and waived his opportunity to make a rebuttal. See also *State v. Malveaux*, 604 S.W.2d 728, 736[12–14] (Mo. App.1980). Defendant's second point has no merit.

### No. 16465

■ This is defendant's appeal from the trial court's denial, without evidentiary hearing, of his Rule 29.15 motion seeking relief from the conviction. Defendant filed no brief with reference to the denial of his Rule 29.15 motion and made no claim of error with reference thereto in his brief in No. 16092. The same situation arose in *State v. Mayo*, 784 S.W.2d 897[1] (Mo.App. 1990), where the court said, "We dismiss his Rule 29.15 motion appeal by reason of abandonment." The appeal in No. 16465 is dismissed.

The judgment from which appeal was taken in No. 16092 is affirmed.

HOGAN, C.J., and MAUS, J., concur.