**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Patrick COTTON, Defendant-Appellant.**

**No. 51159.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 30, 1986.

Motion for Rehearing and/or
Transfer Denied
Jan. 27, 1987.

Application to Transfer Denied
March 17, 1987.

Shawn A. Goulet, Asst. Public Defender, Clayton, for defendant-appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was convicted by a jury of second degree assault and sentenced as a persistent offender to fifteen years' imprisonment. He appeals; we affirm.

On May 23, 1985, a crew of nine construction workers was repairing the sidewalk in the 6300 block of Martin Luther King Drive when defendant approached them and started yelling obscenities. Defendant then directed some obscene comments specifically at one of the concrete finishers, who did not respond. After throwing a metal barrel into a grade where the construction workers were going to pour concrete, defendant approached James Scott. Scott, who was fifty-one years old and weighed 168 pounds, testified that he told defendant he did not "want any trouble" and that the construction crew was there to do a job. After spouting some more obscenities defendant said, "I ought to go back and get my piece," then stated, "I don't need one for you." Defendant, a fairly large and muscular man, punched Scott in the head twice, dazing him and knocking him back against a building. Scott picked up a 12 to 16 inch metal form pin and swung at defendant. Defendant backed up and threw a water cooler at Scott, then picked up a 3 to 6 foot long paddle handle which had a broom attachment and hit Scott in the head several times, causing the broom attachment to come off. The altercation ended when Donald McGraw, the construction project superintendent, grabbed defendant around the waist and two of defendant's friends came over to "get him out of there." Defendant left in a truck with his friends. Defendant had suffered no visible injuries, but Scott's left eye was badly swollen.

Scott was taken to Bethesda Eye Institute where surgery was performed to repair a detached retina in his left eye. The eye was saved, but Scott is legally blind in his left eye and has 20/400 vision.

Defendant argues on appeal that the trial court erred in refusing to grant a mistrial after defendant discovered that the state had not supplied him with James Scott's prior criminal record, which had been requested by defendant.

During cross-examination of Scott, defense counsel asked Scott if he had ever been convicted of a crime. Scott replied that he had not. Defense counsel then asked Scott if he had "pled guilty of any crime." Scott again responded in the negative. On the second day of the trial, after Scott had finished testifying, the defense renewed its discovery request during a discussion in chambers and asked specifically if the prosecutor was aware of Scott being convicted of or pleading guilty to a crime.

The prosecutor said he was not. Defense counsel then indicated that he had information that in 1980 Scott had pled guilty to carrying a concealed weapon in St. Louis County and had received a suspended imposition of sentence. The court indicated that defendant could introduce evidence regarding Scott's criminal record, and the state continued with its case.

At the inception of defendant's presentation of his case, defense counsel asked that a copy of the record of Scott's carrying a concealed weapon offense be admitted into evidence and requested a mistrial. After argument on the motion the following exchange ensued:

> THE COURT: Do you have any evidence at all that the State has willfully secreted evidence from you?
>
> [defense counsel]: Your Honor, I cannot answer that.
>
> THE COURT: Okay. I gather by that then that your answer—that is no. I think, first of all, there's nothing to indicate the State has willfully secreted. Secondly, by your own innuendo, the defendant has found the pleas, and, thirdly, that the Court is going to allow the admission of Defendant's Exhibit A solely for the purpose of reading the prior plea, the record and the prior plea, and I think that will correct any prejudice that the defendant may have sustained, and, therefore, the motion for mistrial is denied.

Defendant asserts that his motion for mistrial should have been granted because the state failed to comply with Rule 25.03 and the defendant was "surprised, prejudiced and deprived of the opportunity.... to attack the credibility of James Scott, the victim." [1]

Assuming for sake of argument that the state did not comply with Rule 25.03, in that it failed to inform defense counsel of Scott's guilty plea and suspended imposition of sentence, we find that the trial court did not abuse its discretion in denying defendant's motion for mistrial.

■■■ The remedy for a discovery violation lies within the sound discretion of the trial court. *State v. Sykes,* 628 S.W.2d 653, 656 (Mo.1982). The basic question is whether the state's failure to disclose resulted in fundamental unfairness or prejudice to the substantial rights of defendant. *Id.*

■■■ Defendant cannot be said to have suffered any prejudice from the alleged discovery violation. The defendant was able to introduce evidence regarding Scott's guilty plea and argue his lack of credibility to the jury. If defendant felt this was not sufficient he could have requested that Scott be recalled for further cross-examination. The asserted failure of the state to disclose information did not result in any fundamental unfairness in this case.

Defendant also complains that the court erred in overruling his objection to the prosecutor's statement during closing argument that Scott might have forgotten about the guilty plea and suspended imposition of sentence.

■■■ During closing argument, "[t]he prosecutor has the right to argue reasonable inferences from the evidence, and additionally, he has the right to draw any inference from the evidence which he believes in good faith to be justified." *State v. McDonald,* 661 S.W.2d 497, 506 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The trial court has broad discretion in controlling closing argument, and its ruling on argument of counsel is reversible "only for an abuse of discretion where the argument is plainly unwarranted." *Id.* We find no abuse of discretion here.

Defendant contends in another point on appeal that the trial court erred in overrul-

---

1. Rule 25.03(A)(7) provides:

   (A) ... [T]he state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part of the following material and information within its possession or control ...

   (7) Any records of prior criminal convictions of persons the state intends to call as witnesses at a hearing or the trial.

**652**

ing his objection to the state's questions regarding what occurred at the construction site the day after the alleged assault. The state elicited testimony that the defendant returned to the construction site on May 24, 1985, and again shouted obscenities at the workers. However, apparently deterred this time by the presence of an armed security guard, defendant continued walking past the construction crew. Defendant contends that this testimony was not relevant.

Evidence is relevant and therefore admissible if it logically tends to prove or disprove a fact in issue or if it corroborates other material evidence. *State v. Wood,* 596 S.W.2d 394, 402 (Mo. banc 1980). "In a criminal proceeding, questions of relevancy are left to the discretion of the trial court and its ruling will be disturbed only if an abuse of discretion is shown." *Id.* Although the testimony objected to pertained to events occurring after the assault, we believe that it bore some relevance to the issue of defendant's intent in accosting Scott and demonstrated a consistent pattern of conduct. The trial court did not abuse its discretion in admitting the testimony.

Defendant also asserts that the trial court erred in overruling his motion for a new jury panel, made at the conclusion of the court's voir dire examination and prior to questioning of the panel by counsel. Defendant based his motion upon the fact that the assistant prosecuting attorney had walked into the courtroom carrying a metal pole similar to the weapon used in the assault. The pole was admitted into evidence during trial. Defendant argues that the presence of the pole during voir dire created "a biased, tainted conviction-oriented jury panel" which should have been dismissed.

The trial court has broad discretion in determining if a jury panel should be dismissed and its ruling should not be disturbed on appeal absent a clear abuse of discretion. *State v. Mentola,* 691 S.W.2d 420, 422 (Mo.App.1985). A trial court is in a better position than an appellate court to determine the effect of alleged prejudicial conduct on the jury panel. *State v. McKinney,* 630 S.W.2d 96, 99 (Mo.App.1982).

In considering defendant's initial objection, the trial court observed that the pole was placed "in an inconspicuous location." Furthermore, the pole was subsequently admitted into evidence and we cannot discern any prejudice to defendant from the prosecutor's action. We find no abuse of discretion in the denial of the motion to quash the panel. Defendant's point is without merit.

Finally, defendant argues that the court erred in denying his motion to strike for cause venireperson Hierholzer. A reading of the voir dire examination indicates that defendant's point is wholly without merit and an extended discussion would serve no jurisprudential purpose. Rule 30.25(b).

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.