**STATE of Missouri, Respondent,**

v.

**Larry L. WALLACE, Appellant.**

No. 52753.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 26, 1988.

Application to Transfer Denied
March 15, 1988.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury tried case, Larry L. Wallace appeals from convictions for one count of rape, § 566.030, RSMo 1986, one count of robbery in the first degree, § 569.020, RSMo 1986, one count of burglary in the first degree, § 569.160, RSMo 1986, and three counts of armed criminal action, § 571.015, RSMo 1986. Defendant was sentenced as a prior sexual offender to 70 years on the rape conviction; and, as a persistent offender, to life imprisonment for the robbery, and to 30 years for burglary; and 30 years for each of the three armed criminal action convictions, all sentences to run consecutively.

The appeal raises three issues. First, whether defendant was denied his right of meaningful confrontation and cross-examination under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 18(a) of the Missouri Constitution when the trial court (1) denied him access to the records of victim's psychiatric history, (2) restricted cross-examination of that history, and (3) refused to order a psychiatric evaluation of the victim. We find that defendant was not denied his right of meaningful confrontation and cross-examination because the record reflects that defendant obtained the victim's psychiatric history and was allowed to cross-examine her on pertinent matters. In addition, the trial court did not abuse its discretion in denying defendant's request for the victim to be psychiatrically examined.

Second, whether the trial court erred in sustaining the state's objection to defendant's statement on voir dire "... As I said, Mr. Murphy [prosecutor] and I disagree very strongly about what happened in this case", because it gave the inference that defense counsel believed her client guilty and was thus prejudicial. We find that defendant improperly injected personal opinion in this case and the trial court's sustaining of the state's objection was within its discretion, *State v. Garrett*, 627 S.W.2d 635 (Mo.banc 1982). Third, whether sentencing defendant to three consecutive terms of punishment for armed criminal action constituted cruel and unusual punishment and violated the double jeopardy clause. Pursuant to *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 674, 74 L.Ed. 535 (1983), and *State v. Cooper*, 712 S.W.2d 27, 31 (Mo.App.E.D.1986), cumulative punishment resulting from Missouri's armed criminal statute is not precluded by the double jeopardy clause or the clause against cruel and unusual punishment. We affirm.

Briefly, the evidence indicates that about 1 p.m. on February 3, 1986, the victim was sitting in the front doorway of her flat when defendant approached her and asked directions to Iowa Street. The victim, who is confined to a wheelchair and does not have the use of her legs, and has only limited use of her right arm, said she did not know where it was. He then asked directions to Chippewa Street. Before she could answer, defendant pulled a knife out of a newspaper that he was carrying and pushed the victim (in her wheelchair) back inside the house and locked the door.

Defendant then demanded money. The victim told him that she did not have any; however, defendant found twenty dollars in her housecoat and took it. He pushed her into the bedroom, and while looking for more money, found ten dollars under the mattress. From either the dresser or the cabinet, he took a necklace, three watches, some rings, a camera, and some food stamps. In addition, defendant found the victim's checkbook and made her write out a check for the amount she had in her account.

Defendant then pulled the victim out of her wheelchair and placed her on the floor of her bedroom, and told her to pull up her clothes, which she did. Although told to spread her legs, she couldn't because of her physical limitations; the defendant then spread them. Defendant then inserted his penis into the victim's vagina. Later, defendant disconnected the telephone, pushed her wheelchair into the living room, and left.

After defendant left, the victim crawled into the living room, got back into her wheelchair, fixed the phone, and called the police. Two officers arrived at the victim's home at approximately 1:45, to whom she

described her assailant, the clothes he was wearing, and the fact that he had a knife concealed in a rolled up newspaper.

After obtaining this information, Officer Kenneth Ackerman left to search the neighborhood for the assailant. Approximately three and a half blocks from the victim's home, he noticed a man fitting the description running alongside the street. The officer stopped him. While arresting him, the officer saw a knife handle protruding from a newspaper, which the officer obtained. A search of defendant revealed a check with the victim's name on it, food stamps, four necklaces, three watches, three rings, a camera, and $32.84. Officer Ackerman also noticed that the fly on defendant's pants was open.

Although the victim was taken to the hospital, no signs of trauma were revealed during the examination, and testing showed only a slight possibility that seminal fluid was present.

The victim had a history of being treated for mental illness. However, at the time of the offense, she was not in any treatment program. The victim was taking six different medications; four for various physical illnesses, plus Thorazine and Valium. She also had a history of conversion reaction, which is a loss of physical functions without an apparent physical basis, presumed to be due to stress.

The first issue defendant raises is that he was denied his right of meaningful confrontation and cross-examination because the trial court limited his access to the victim's psychiatric history. We find no such denial, because defendant was not denied access to the victim's psychiatric history. All of the victim's medical records were subpoenaed by defendant and made available to him prior to trial. Therefore, defendant's access to these records was not denied.

Defendant further asserts he was denied his right of meaningful confrontation when the cross-examination of the victim concerning her psychiatric history was restricted. We find this claim to be without merit.

■ We are unable to find any questions asked on cross-examination of the victim concerning her psychiatric history to which the state objected and the objection was sustained. In view of this, defendant cannot complain. The only possible complaint, which defendant did not raise on appeal, could be regarding rulings made by the court on the admissibility of medical records of the victim. The court and counsel did review medical records which defendant intended to offer into evidence. Defendant was allowed to introduce records dated May 15, 1985, which indicated victim had hysterical conversion reaction chronic with depression, as well as records dated April 2, 1986, which contained a diagnosis of conversion hysteria. In so doing, the trial court noted that "they are relevant to her condition on February 3, and her condition today as far as testifying." However, the court did sustain the state's objection to similar records in 1980 and 1979 on the basis of being "too remote". Such ruling was within the discretion of the trial court and the trial court did not abuse its discretion. Point denied.

■ Defendant also asserts that his right to a meaningful confrontation was denied when the trial court refused to order a psychiatric evaluation of the victim. We find this claim to be without merit. *State v. Clark*, 711 S.W.2d 885 (Mo.App.E.D.1986).

■ Defendant's second issue is that the trial court erred in sustaining the State's objection to defendant's statement on voir dire "... As I said, Mr. Murphy [prosecutor] and I disagree very strongly about what happened in this case.", because it gave the inference that defense counsel believed her client guilty and was thus prejudicial. We find no error.

Defendant's statement, apparently a prelude to a question about why we have jurors, was improper because it injected counsel's opinion into the proceedings. An attorney should not express a personal or private opinion as to matters concerning the case. *State v. Warren*, 320 S.W.2d 575, 577 (Mo. Div. 1 1959). The State's objection to this statement was proper. Further, a trial court has broad discretion in determining the propriety of questions during voir dire. *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982). Absent an abuse thereof, we should not interfere.

Here the trial court did not abuse its discretion and the point is denied.

 Defendant's third issue is that the trial court erred in sentencing him to three consecutive terms of punishment for armed criminal action for a single possession of a weapon because it constitutes cruel and unusual punishment and violated the double jeopardy clause.

A similar argument was raised, and rejected, in *State v. Cooper*, 712 S.W.2d 27, 31 (Mo.App.E.D.1986). There, we said:

By enacting the armed criminal action statute, § 571.015, RSMo 1978, our state legislature has specifically authorized the imposition of cumulative sentences in a single trial when a felony has been committed by means of a dangerous instrument or deadly weapon. *Missouri v. Hunter*, 459 U.S. at 368, 103 S.Ct. at 679. *See also* § 571.017 RSMo Supp.1984; Thomas, *supra*, at 106. Each time a dangerous instrument is employed to effectuate certain felonies, the crime of armed criminal action is committed. Here, defendant was charged and convicted of two underlying felonies—escape and aiding the escape of a prisoner.

Each of these felonies is distinct and separate. *See* § 575.210 and § 575.230, RSMo 1978. Defendant admits this. To perpetrate each of these felonies, defendant used a dangerous instrument. Defendant, therefore, was charged and convicted of two counts of armed criminal action. These charges and convictions are proper. Multiple charges are permissible and proper if the defendant has committed separate crimes. *E.g., State v. Lint*, 657 S.W.2d 722, 725 (Mo.App. 1983).

Here, the underlying felonies are burglary, robbery, and rape; each of these felonies is distinct and separate, and defendant used a dangerous instrument (knife) to perpetrate these crimes. The multiple convictions are proper.

 Finally, defendant asserts that the sentence constitutes cruel and unusual punishment, relying on *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). At page 3009 of 103 S.Ct. the Court said:

In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted.

Each of the sentences assessed by the trial court was within the statutory limit. Each of the offenses which the defendant committed is a very serious one. The defendant has been convicted of sodomy in 1967, and, in 1975, of three felonies, namely robbery, carrying a concealed weapon, and exhibiting a dangerous and deadly weapon in a rude, angry, and threatening manner. The victim was unable to walk and is confined to a wheelchair. The sentences imposed were proportionate and within the constitutional limits; further, the ordering of the sentences to run consecutively did not constitute an infliction of cruel and unusual punishment. Defendant's third point is denied.

The judgment is affirmed.

SIMON, P.J., and CRANDALL, J., concur.