STATE of Missouri, Respondent,

v.

Jose G. PENA, Appellant.

No. WD 41339.

Missouri Court of Appeals,
Western District.

Feb. 27, 1990.

Patrick J. Eng, Christopher S. Kelly, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This appeal is from a jury conviction for felony possession of a controlled substance, § 195.020, RSMo 1986, for which appellant Jose G. Pena was sentenced to ten years imprisonment. Pena sets forth six points of trial court error: 1) error in overruling his motion to suppress statements and physical evidence; 2) violation of his *Miranda* rights; 3) error in not allowing Pena to question Trooper Chitwood regarding the nature of past traffic stops to show the stopping of Pena's vehicle was without probable cause and as a pretext for searching the vehicle; 4) error in overruling Pena's objection during voir dire concerning the prosecutor's comment that drug abuse is a major problem in our society; 5) error in allowing prosecutor to argue during closing argument that Pena was a "drug dealer" and "drug courier;" and 6) error in allowing prosecutor to argue during rebuttal part of closing argument a certain term of years as punishment where reference to such term of years was not made in first half of closing argument. The judgment of conviction is affirmed, however, the case is remanded for re-sentencing.

As sufficiency of the evidence is not in dispute, the facts viewed in the light most favorable to the verdict is as follows: On the night of March 3, 1988 Missouri Highway Patrol Trooper Martin Chitwood was patrolling Interstate 70 in Boone County. He was eastbound when he noticed a westbound van which appeared to be exceeding the speed limit. Trooper Chitwood crossed the median, paced the van and determined it was traveling 73 miles per hour. He also observed the van weaving in and out of its lane. He stopped the van and went up to the drivers window where he saw Pena, the driver, and another individual in the front passenger seat.

Trooper Chitwood saw a small plastic container sitting on the dashboard of the van filled with a white powdery substance. Pena went with Chitwood into the patrol car where the trooper noticed Pena's eyes were bloodshot and his face was flushed. Pena was advised he had been stopped for speeding and weaving.

At this time, the trooper asked Pena for his consent to search the van. Pena agreed and filled out a consent to search form. During the search, Chitwood seized the container on the dashboard plus a white plastic bag found in the middle of the floor of the van behind the driver's and passenger's seats. Inside this bag were five plastic bags each containing the same amount of a white powdery substance, which was later identified as cocaine.

Chitwood placed Pena under arrest for possession of cocaine, handcuffed him and advised him of his *Miranda* rights.

Pena told the trooper he was an addict and had been using cocaine for several years. He also stated all the cocaine in the van was his and did not belong to the passenger. Pena's trial testimony was to the effect he admitted the cocaine was his, a) because he thought Chitwood was going to take it and then let Pena go and, b) because he was scared. It was determined the plastic bags contained 137.23 grams of cocaine, however, the container on the dashboard contained table salt.

Pena first claims trial court error in overruling his motion to suppress statements

he made to and evidence found by Trooper Chitwood in that the trooper lacked cause to stop the van and because the consent given to search was not given voluntarily.

■ The standard of review is limited to whether the trial court's decision is supported by substantial evidence, *State v. Craig*, 759 S.W.2d 377, 378 (Mo.App.1988), stating all facts and reasonable inferences favorably to the order challenged on appeal and disregarding contrary evidence and inferences if the evidence is otherwise sufficient to sustain the trial court's finding. *State v. McQuinn*, 761 S.W.2d 668, 669 (Mo.App.1988); *State v. Singer*, 719 S.W.2d 818, 821 (Mo.App.1986).

■ In the instant case, the trial court deemed Trooper Chitwood's testimony sufficient to find probable cause to stop Pena's vehicle. The trooper testified that, after pacing the van, he determined it to be traveling 73 miles per hour and also observed it weaving off the roadway then back across the center line. This testimony was sufficient for a finding of probable cause. *Singer, supra.*

The second portion of Pena's first point contends that, even if the stop was valid, the search was not because his consent was not voluntarily given.

■ A trial court has wide latitude in determining the admissibility of evidence and, absent a clear abuse of discretion, an appellate court will not interfere with this determination. *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.1986). No abuse can be shown in this case. The trial court relying on Chitwood's testimony, as it had a right to do, found a valid consent. He testified that after Pena was in the patrol car, he asked for consent to search the vehicle. There was no coercion used, and Pena so agreed in writing. Moreover, Pena testified he voluntarily consented to the search of the van. The fact that Pena later contended Trooper Chitwood told him he had to sign the consent form, that he signed the form after the cocaine was discovered, and that he was scared at the time of the search holds no weight, the court was with-

in its power to disregard this contrary evidence. Point one is denied.

The second point on appeal contends Pena's consent to search was invalid because it was obtained through custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This point raises two questions: 1) was Miranda applicable, and 2) was there an interrogation? A negative response to either question will require denial of this point.

■ First, in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), it was held "persons temporarily detained pursuant to [traffic stops] are not 'in custody' for the purposes of *Miranda*." 468 U.S. at 440, 104 S.Ct. at 3150. "[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest." *Id.* (Citation omitted). Only if detention pursuant to a traffic stop renders a motorist "in custody" will he be entitled to the full protection prescribed by *Miranda. Id.*

■ In the present case, this court finds Pena was not in custody when consent was given, therefore, *Miranda* does not apply. Although Pena testified Trooper Chitwood had handcuffed him prior to asking for consent, the trial court chose to instead believe the trooper's testimony—that the stop was a typical traffic violation stop, that Pena was not handcuffed at the time consent was given, and finally, Pena's freedom was not curtailed to any degree associated with formal arrest. This finding was supported by substantial evidence.

Second, even if *Miranda* was applicable, it is doubtful there was interrogation. "Many courts have held that a request for consent to search is not interrogation for *Miranda* purposes because consent is not an incriminating statement." (Citations omitted). *State v. White*, 770 S.W.2d 357, 359 (Mo.App.1989). Moreover, "a *Miranda* violation in and of itself would not vitiate the consent to search if otherwise voluntarily given." *Id.* at 360. Point two is denied.

Pena's third point asking for reversal involves the sustaining of the prosecutor's objection, at the evidentiary hearing, to defense counsel's questions of Trooper Chitwood "regarding the nature of past traffic stops in that such evidence would have been that a substantial number of [the trooper's] traffic stops are not for probable cause but rather are stops made because the drivers fit a drug profile."

Initially, the court must dispose of the contention that the trial court was not apprised of the nature of this evidence. Although the court sustained the prosecutor's objection at the hearing, defense counsel made no effort to make an offer of proof. However, at trial defense counsel did make an offer of proof consisting of questioning Trooper Chitwood concerning his proclivity to stop out of state vehicles driven by persons of foreign descent. After the offer, the court "adhere[d] to the ruling that it previously made, that the motion to suppress is overruled."

■ A trial judge has wide latitude in ruling on evidence adduced by the parties at trial, *Clark*, at 932. Absent clear abuse, an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence. *Id.* During the offer of proof, the following questioning of Trooper Chitwood occurred:

Q. Do you know approximately or exactly how many stops that you have made that have resulted in arrests for possession of narcotics?

A. This year or?

Q. Whatever estimate you can give me and just tell me the time frame.

A. Oh, I made approximately 55, 60 arrests in the last year and a half to two years.

\* \* \* \* \* \*

Q. Do you have any idea how many of those stops involved cars with out-of-state license plates?

A. No, I wouldn't. I have no idea. I don't keep statistics on it.

\* \* \* \* \* \*

Q. Would you say that more than ten of those involved out-of-state license plates?

A. Yes, probably so.

Q. More than 20?

A. Probably so.

Q. More than 30?

A. Probably so.

Q. More than 40?

A. No, I wouldn't say more than 40, no.

\* \* \* \* \* \*

Q. Do you have any approximation of how many of the drivers were of a foreign descent, meaning not American?

A. Well, if we go on the 10, 20, 30 basis again, I would say less than, less than 20, uh-huh.

On cross-examination, the following questions were asked:

Q. Trooper Chitwood, do you base your stops of individuals solely upon out-of-state license plates?

A. No.

Q. Solely upon who you see in the car?

A. No.

Q. Do you base your stops of individuals based on either probable cause or reasonable suspicion?

A. Probable cause they've committed a traffic violation, committed a violation of the law, yes.

This testimony was sufficient to support the trial court's finding. *Singer, supra.* A clear abuse in excluding this evidence has not been shown. *Clark, supra.* Point three is denied.

Pena's fourth point concerns the overruling of defense counsel's objection, during voir dire, relating to the prosecutor's comments to the veniremen that drug abuse is a major problem in our society. It is contended this was a personal opinion of the prosecutor used to inflame and prejudice the veniremen.

The following occurred during voir dire:

PROSECUTION This is a very difficult question, this next question, but I also think it's a very important question as well. Drug abuse in this country is a major problem. It affects—

DEFENSE I object, Your Honor. Counsel stating her personal opinion.

COURT That objection will be overruled.

PROSECUTION It is a major problem, and it affects all levels of society. And I would like to ask you if any of you personally or members of your family or close friends have had problems with illegal drugs that would keep you from listening to the evidence in . this case in a fair and impartial manner.

Pena argues this expression of personal opinion was improper, citing *State v. Wallace*, 745 S.W.2d 233 (Mo.App.1987).

The nature and extent of what questions counsel may ask during voir dire are discretionary with the trial court, and such discretion will be disturbed on appeal "only when the record shows a manifest abuse of that discretion." *State v. Carmack*, 633 S.W.2d 218, 220 (Mo.App.1982); *Wallace*, at 235. "The only legitimate limitation to a party's examination of jurors on voir dire would be at that point where questions or comments tend to create prejudice against the defendant." *Carmack*, at 200.

■ There is certainly no "manifest abuse of discretion" in the instant case. The prosecutor's remark that drug abuse is a major problem in this country is more akin to a statement of fact/common knowledge than an expression of personal opinion. *See State v. Kimmins*, 514 S.W.2d 381, 382 (Mo.App.1974). Moreover, there can be shown no prejudice to the defendant by such a statement. *See, Wallace*, at 235–36. Point four is denied.

The fifth point claims trial court error in allowing the prosecutor to state during closing argument, over objection, that Pena was a "drug dealer," a "drug courier," and in overruling his motion for mistrial based on such argument.

The following was said by the prosecutor during closing argument:

... what I would like the jury to consider is the amount of cocaine involved. And how many individuals this amount of cocaine can affect. And it's clear that this can affect hundreds of individuals. So

this jury is charged with giving a message in this case. Drug couriers are a problem in this country. They make it possible to distribute illegal substances. They make it possible to get these substances to individuals. The only way to prevent this type of behavior is to say to the drug courier, "It's not worth the risk...."

Pena charges this statement was made without an evidentiary foundation and made in the rebuttal portion of closing argument when defense had no further opportunity to respond.

■ The trial court has broad discretion in controlling closing argument, with wide latitude accorded counsel in their summaries. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983); *State v. Henton*, 753 S.W.2d 19, 20 (Mo.App.1988); *State v. Cotton*, 724 S.W.2d 649, 651 (Mo.App.1986). Discretion in allowing or rejecting argument is reversible "only for an abuse of discretion where the argument is plainly unwarranted." *McDonald*, at 506; *Henton*, at 20; *Cotton*, at 651. The prosecutor has the right to argue reasonable inferences from the evidence and to argue any inference from the evidence he deems in good faith to be justified. *McDonald*, at 506; *Cotton*, at 651. "A conviction will be reversed for improper argument only if it is established the complained of comments had a decisive effect on the jury's determination." (Citation omitted). *Henton*, at 20.

■ Turning to the evidence at hand, the prosecutor could in good faith argue Pena possessed the cocaine because he was a drug courier or dealer. The appellant was in control of 137.23 grams of cocaine, contained in five separate packages with a street value of $150 per gram, or $20,584.50 total value. He left Dodge City, Kansas on March 1, arrived in Chicago, Illinois on March 2, and was arrested on March 3 on his way back to Kansas. It was reasonable for the prosecutor to infer from the large amount of cocaine, its packaging, and the short duration of the trip that Pena was a dealer or courier. *See e.g.,*

*McDonald,* at 506. There was no abuse of discretion in allowing this argument.

Pena also argues error occurred because he could not rebut the state's assertion that he was a drug courier or dealer since the damaging statements were first put forth in the second half of the state's closing argument. There is no citation of authority on this point. In any event, there was a reasonable inference to be drawn from the evidence Pena was a courier or dealer. Finally, this argument was not included in the point relied on but was only mentioned in the argument portion of appellant's brief. *See State v. Stevenson,* 589 S.W.2d 44, 47 (Mo.App.1979). Point five is denied.

Pena's sixth and final point contends error in allowing the prosecutor to argue during the rebuttal portion of closing argument, over objection, for a certain term of years as punishment where reference to such term of years was not made in the prosecutor's first half of closing argument, depriving him of an opportunity to respond to such argument.

The prosecution stated in her opening portion of closing argument:

I have just a few more things to bring up. And one thing I have to bring up in the first part of my argument and I better throw it in now is punishment. And I'm going to come back after Mr. Elmer [defense counsel] speaks, and I will address some of the issues that he's raised, but I will also discuss with you the issue of punishment. And when I come back, I am going to ask you to think of a reasonable punishment and a meaningful punishment in this case. And by meaningful, I mean one that will express to the community and to the defendant that we will not tolerate this type of behavior. And I will be back in a few minutes.

In the rebuttal portion of closing argument, the state continued:

And I would ask you to think about the full range of punishment.

\* \* \* \* \* \*

I'm asking for the jury to consider, I would like for nothing less than a seven year sentence in this case. And I would like for you to consider the maximum punishment of twenty years. And in considering that, I would like for you to think about what type of offense is involved, the amount of cocaine involved, and also making sure that this punishment is a meaningful one.

Although at odds with language not essential to the decision contained in *State v. Burton,* 721 S.W.2d 58 (Mo.App.1986), a case decided by this court, Missouri law holds "it is not required that the prosecutor make a reference to a particular number of years in the opening half of his closing argument to ensure that the state may thereafter argue punishment in the closing argument." *State v. Ross,* 606 S.W.2d 416, 419 (Mo.App.1980); *State v. Brown,* 480 S.W.2d 839 (Mo.1972).

In *Brown,* near the close of the state's opening argument, the prosecutor stated "And I later on will come back, at the conclusion, and ask for a penalty sufficient to the crime and ask that this man be sent to the penitentiary for a number of years...." Then, in final argument, the prosecutor stated "And only you—only you—can say it's serious ... and no one hears how serious it is until you say—until you say, twenty years." In finding no error, our Supreme Court held

that the prosecuting attorney did not wait until final argument to mention punishment, but did make reference to the matter of punishment in his opening argument. By such reference, he gave notice of his intention to argue further on the matter of punishment in closing argument.

*Brown,* at 840.

The Southern District's *Cooper v. State,* 779 S.W.2d 721 (Mo.App.1989) is the most recent decision on point. There the prosecutor stated in the first portion of closing argument "that a lengthy prison term is necessary." Then in its rebuttal portion, the state requested a thirty year sentence. In finding no reversible error, the court held the prosecution's opening remark was sufficient notice to defendant of the state's

intention to argue further on the matter of punishment. *Id.* at 723.

As stated in *Ross, supra,* the guidelines concerning argument on punishment are to "ensure that the defense has an opportunity to rebut the State's argument for, presumably, severe punishment." *Ross,* at 419. The Eastern District in *Ross* held the prosecutor does not have to argue a specific number of years in the opening phase, but must give an intent to later argue punishment to be proper. *Id.* The argument in this case paralleled the argument in *Ross.*

This court is constrained to follow the *Brown* decision and therefore finds no error in allowing the prosecution to argue a specific number of years in closing argument. Point six is denied.

 Pena's appellate counsel at oral argument filed a motion for reduction of the ten year sentence. It is undisputed the punishment for a first time offender, under these charges, was up to 20 years on the date of conviction, August 24, 1989. While this case was on appeal the legislature in the laws of 1989 in S.B. 215 and 58, reduced the sentence to a maximum of seven years. §§ 195.202.2, RSMo Cum. Supp. 1989; 558.011.1(3), RSMo 1986. This situation is decided by *Hamil v. State,* 778 S.W.2d 247, 249–50 (Mo.App.1989), in a case where amending legislation reducing the penalty occurs before the criminal case is final. This court said:

> Section 1.160(2) manifests the legislature's intent that in qualifying cases a convicted defendant should benefit from an amending statute reducing the penalty for the crime for which he was convicted. Section 1.160(2) states "that if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law." Section 1.160(2) is applicable to cases still pending at the time a reducing statute becomes law. A judgment is not final for purposes of appeal because it is not conclusive on the parties "until the losing party has failed to appeal within the time allowed by law, or having appealed, until the appeal is determined." A suit is pending from the time it is instituted until its disposition is final.

(Citations omitted.)

The judgment of conviction is affirmed. The case is remanded for the sole purpose of re-sentencing in conformance with the new statutory language.