**STATE of Missouri, Respondent,**

v.

**Mark R. DAVIS, Appellant.**

**No. WD 61884.**

Missouri Court of Appeals, Western District.

Jan. 27, 2004.

Rehearing Denied March 2, 2004.

Susan Lynn Hogan, Appellate Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris, Breck Burgess, Office of Attorney General, Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Mark Davis contends that his right to a fair trial was prejudiced when the prosecuting attorney argued punishment for the first time in the rebuttal portion of closing argument. Specifically, the prosecutor urged the jury to recommend a thirty-year sentence on three counts of first-degree robbery and three counts of armed criminal action. We find that the opening portion of the State's closing argument did not adequately set forth the State's position on sentencing and that the trial court erred to Davis's prejudice when it overruled his timely objection to the rebuttal argument. We, therefore, reverse Davis's convictions and remand for a new trial.

**Facts**

A jury convicted Mark Davis of three counts of first-degree robbery and three counts of armed criminal action relating to three separate robberies that occurred at two different payday loan service centers located in Grandview, Missouri. National Cash Advance was robbed on April 19, 2000, and again on November 28, 2000. Check into Cash was robbed on June 9, 2000. Each time, a man entered the store and demanded at gunpoint that the employees give him the money in the cash register. He then used a white plastic grocery bag to carry away the money.

On December 18, 2000, a National Cash Advance employee identified Davis from a photo lineup as the repeat robber of that store. On January 9, 2001, the manager of Check into Cash also identified Davis as the robber of that location.

Assistant prosecutors Ms. Stansell and Ms. Mortimer represented the State of

Missouri at Davis's trial. Upon conclusion of the evidence, Ms. Mortimer presented the first portion of closing argument to the jury, during which she made the following statement:

> Now, in a moment Ms. Stansell is going to have the opportunity to address you again on behalf of the State of Missouri. And at that time she's going to discuss with you what the State of Missouri feels is the appropriate punishment in this case for Mark Davis for all six counts of robbery in the first degree and armed criminal action.

Defense counsel did not mention sentencing or punishment during his closing argument. Ms. Stansell then presented the final portion of the prosecution's closing argument to the jury. She stated, "I'm going to talk to you now about punishment. The range of punishment for robbery in the first degree is 10 to 30 years or life imprisonment." At this point defense counsel objected to "any mention other than the word punishment in the second half of closing argument" because the prosecution did not "raise the issue in the first half." The trial court overruled the objection and Ms. Stansell continued with her rebuttal:

> Ladies and gentlemen of the jury, there's no frequent robber discount in Jackson County. You don't commit one and get two free. Mark Davis has to be punished for all three of these robberies that he committed. If he is sentenced to anything less than thirty years in prison, he will be getting two free.
>
> Ladies and gentlemen, the State of Missouri asks that after you find Mark Davis guilty of all six counts that you recommend that he spend thirty years in the Missouri department of corrections.

The jury found Davis guilty on all counts and recommended sentences of fifteen years in prison on each count of first-degree robbery and five years in prison on each count of armed criminal action. The trial court followed the jury's recommendations and directed that the sentences run concurrently.

## Standard of Review

We review the trial court's ruling on closing argument only for an abuse of discretion. *State v. Gilmore*, 22 S.W.3d 712, 715 (Mo.App.1999) (citing *State v. Mahurin*, 799 S.W.2d 840, 844 (Mo. banc 1990)). Such a ruling will constitute reversible error, however, only when both an abuse of discretion by the trial court and prejudice to the defendant as a result of the abuse are present. *Id.*

## Point on Appeal

In his sole point on appeal, Davis requests a new trial on the basis that the trial court improperly permitted the State to argue for a specific punishment for the first time in rebuttal argument. As a result, he contends that he was not put on fair notice of the State's position on punishment and was deprived of the opportunity to respond in closing argument. The State acknowledges its responsibility to address the issue of punishment in the opening portion of closing argument but contends that it satisfied this responsibility. Alternatively, the State argues that Davis was not prejudiced because the jury did not recommend the requested sentence.

## Discussion

The requirement that the prosecution fairly state its position on punishment in the opening portion of closing argument, although long customary, was first held to be potentially prejudicial error in *State v. Peterson*, 423 S.W.2d 825, 830 (Mo.1968). There, the Court expressly held that the analogous rule set forth in *Shaw v. Termi-*

*nal Railroad Ass'n of St. Louis,* 344 S.W.2d 32, 36–37 (Mo.1961), which requires a civil plaintiff to discuss damages in the first portion of closing argument or be barred from raising the issue in rebuttal, would be applied in criminal cases to the issue of punishment.[1]

In *Peterson* it was found that the trial court abused its discretion in overruling defense counsel's objection when the prosecutor asked the jury to impose the "maximum sentence" in the rebuttal portion of closing argument after neither he nor defense counsel discussed the issue of punishment in the preceding portions of closing argument. 423 S.W.2d at 827, 831. The Court stated that it was not appropriate to amplify the *Shaw* rule in the criminal context but did provide:

> The point will, of course be ruled in each case on its own peculiar facts, including these issues: whether a fair statement of the State's position has been made in some manner in its opening argument; whether any waiver has been made by the defendant, either by his counsel's own argument or by the failure to object properly and to preserve the point; and, lastly, a determination of the question of prejudice in view of all the circumstances.

*Id.* at 831. The Court also observed that violation of the rule involved inherent prejudice even though the sentence imposed was less than the "maximum sentence"

requested by the prosecution. *Id.* at 827, 830.

Davis relies upon *State v. Gilmore,* 22 S.W.3d 712, 715–16 (Mo.App.1999), as standing for the principle that the three *Peterson* guidelines quoted above should be used to determine whether the State's "improper" argument about punishment in rebuttal is reversible error. The State seems to believe that whether or not an argument is "improper" is cut and dry, i.e. if the State merely mentions punishment in the opening portion of closing argument, any argument about punishment in rebuttal is proper. The State argues that the *Gilmore* (and *Peterson*) guidelines have no application here because Ms. Stansell's argument was not "improper." It was not "improper" because Ms. Mortimer stated that Ms. Stansell would argue punishment in the rebuttal, and there is no requirement that the State request a punishment of a particular number of years in the opening portion of closing argument.

We disagree with the State's position because it is based on a complete misunderstanding of the purpose of the closing argument rule. This misunderstanding has, in part, been based on some intermediate appellate decisions that have likewise either misunderstood the purpose of the rule or failed to analyze the issue properly in light of *Peterson.*

The underlying purpose of the rule is not, as the State argues, to put the defendant "on notice" of the State's intent to

1. The Court was presented with the same issue five years earlier in *State v. Hale,* 371 S.W.2d 249, 255–56 (Mo.1963). Although the Court acknowledged *Shaw* favorably for the principle that it is improper and unfair for counsel to broach new points in rebuttal, it found no affirmative showing of prejudice because the trial court did not abuse its discretion in overruling the defendant's objection to the prosecution's argument about punishment in the rebuttal portion of closing argument. *Id.* In *Peterson,* the Court did not question the

*Hale* holding on its particular facts but said that the *Hale* Court recognized the inherent error in allowing argument about punishment for the first time in the rebuttal phase subject to issues of waiver, preservation, and lack of prejudice. *Peterson,* 423 S.W.2d at 829–30. In fact, one year prior to *Peterson,* the Court was faced with the issue in *State v. Shannon* but held that it was not preserved for appeal because it was omitted from the defendant's motion for a new trial. 413 S.W.2d 198, 199 (Mo.1967).

argue punishment at some later time during closing argument. In *Peterson*, the Court rejected an argument that the defendant could not have been misled by the prosecution's argument about punishment in rebuttal because it was to be expected that the State would talk about punishment at some time. 423 S.W.2d at 830. Although the State's argument is somewhat different here (that the defendant knew the State would argue punishment in rebuttal because it said so in the opening portion of closing argument), it is logically indistinguishable.

■ The rule adopted in *Peterson* (and in *Shaw* for civil cases) is based on a consideration of the purpose of closing argument and its three stages. The rule has been expressed in the context of the corollary civil rule:

*[I]n the final portion of the closing argument a plaintiff can argue anything that plaintiff argued in the initial portion of the closing argument ... and rebut anything that the defendant argued in defendant's portion of the closing argument.*

*Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 18 (Mo. banc 1994) (emphasis added). The essential purpose of closing argument is to advise the jury and opposing counsel of each party's position, i.e. how that party views the issues and what that party would like the jury to do. Rules that allowed the state in a criminal case or a plaintiff in a civil case to make an argument about punishment or damages for the first time in rebuttal would undermine the purpose of closing argument by taking away the other party's opportunity to respond to the argument and make its response known to the jury.

■ The closing argument rule's purpose has been expressed in the criminal context, "[I]t is improper and unfair for state's counsel, in final argument, to refer to points upon which the state relies which were not mentioned in opening argument, *for the reason that the defense is thereby deprived of the opportunity to answer such new points.*" *State v. Hale*, 371 S.W.2d 249, 256 (Mo.1963) (emphasis added). The purpose of the rule is to allow defense counsel to answer the State's argument. *State v. Maxie*, 513 S.W.2d 338, 345 (Mo.1974). Thus posed the State cannot seriously maintain that merely stating an intent to discuss punishment in the rebuttal portion of closing argument gives a fair statement of the State's position to which the defense can answer or respond.

Nevertheless, the State argues in reliance upon *State v. Ross*, 606 S.W.2d 416, 419 (Mo.App.1980), that it is not required to mention a specific term of years in the opening portion of closing argument to be able to argue punishment in rebuttal. In *Ross* the prosecutor mentioned certain instructions on punishment and said "I would like to defer discussing those particular instructions ... until the second half of my argument[.]" *Id.* at 418–19. The State argues that *Ross* thus stands for the proposition that all it must do is advise the defendant of an intent to talk about punishment in the rebuttal portion of closing argument.

Although the court did say that the defendant was put on notice of the State's intent to talk about punishment later, the dispositive point in our view was that the defendant waived any complaint about the limited mention of punishment in the prosecutor's opening argument by discussing punishment in his own argument. In his own closing, defense counsel stated, " 'There's some question about punishment and so on, but the point is you can't assess punishment against someone if they haven't been shown to be guilty beyond a reasonable doubt. We're not even going to talk about that.' " *Id.* at 419.

We do acknowledge, however, that *Ross* indicates the prosecutor's obligation is merely to notify the defendant that the prosecutor intends to argue punishment in rebuttal. We disagree with *Ross* to the extent that it may be construed to suggest the rule's purpose is merely to put the defendant on notice that the State intends to make an argument about punishment in rebuttal. Such a construction clearly conflicts with the Supreme Court's pronouncement in *Hale* and *Peterson* that the rule's purpose is to fairly apprise the defendant of the State's position so that the defendant can respond, if he chooses, to that position. Mere notice that an argument about punishment will be made in rebuttal does not satisfy this purpose.

The State, however, argues that its interpretation of *Ross* is supported by the Missouri Supreme Court's decision in *State v. Brown*, 480 S.W.2d 839 (Mo.1972). The *Ross* court did in fact cite to *Brown*, but the facts and the argument in each case are distinguishable. In *Brown* the prosecutor argued in the first portion of closing argument that the case was serious because Brown attempted to commit robbery with a loaded gun and had the intent to kill if necessary. *Id.* at 839. The prosecutor did not ask for a specific sentence in the first portion of the argument. *Id.* at 839–40. He did, however, state that he intended to come back in rebuttal and ask for serious imprisonment time commensurate to the crime. *Id.*

Although the Court did say that the prosecutor's reference to the matter of punishment "gave notice of his intention to argue further on the matter of punishment in closing argument[,]" *Id.* at 840, we do not read *Brown* as departing from the purpose of the rule expressed in earlier cases. Moreover, a specific holding regarding the rule's purpose was unnecessary to the Court's review. The defendant in his closing argument made reference to the issue of punishment and, under *Peterson*, thereby waived any deficiency in the prosecutor's opening argument. *Id.* Most importantly, Brown could not possibly show any prejudice because the jury made no recommendation for a specific punishment. *Id.*

Our reading of *Brown* is reinforced by the Supreme Court's decision two years later in *State v. Maxie*, 513 S.W.2d 338 (Mo.1974). In the first portion of closing argument, the prosecutor did not mention punishment. *Id.* at 345. In rebuttal he told the jury that they had the right to determine if the defendant was guilty and what his punishment would be: death, life, or the range of punishment for second degree murder if found guilty of the lesser-included offense. *Id.* The defendant did not say anything about punishment and objected when the prosecutor made his argument about punishment in rebuttal. *Id.* Thus, the defendant did not waive his objection under *Peterson.*

Clearly, if *Brown* stands for the proposition that the rule's purpose is only to give notice of the intent to argue later, then the *Maxie* Court should have found error. Nevertheless, the Court found that the trial court did not err in overruling the defendant's objection because the prosecutor "was not really 'arguing' for any particular punishment[.]" *Id.* Because the State took no position on the issue of punishment, the defendant suffered no adverse effect. The Court more clearly stated the rule's rationale in its cautionary warning:

> [P]rosecutors and trial judges are cautioned that, if the matter of punishment is to be discussed at all, it *should be argued* in the opening portion of the state's argument *in order that defense counsel will have an opportunity to answer that argument.* The failure to do so will cause serious risk of reversal

for there are not many cases wherein the determination of no prejudice can be made on an appellate level in the area of argument.

*Id.* (citations omitted) (emphasis added). *Brown* and *Maxie* do not support the State's position.

The State also cites *State v. Keely,* 791 S.W.2d 864 (Mo.App.1990), for the proposition that it is only required to put the defendant on notice of its intent to argue punishment in rebuttal. In *Keely,* the arguments made in the first two parts of closing argument were similar to those made in *Ross. Id.* at 866. The prosecutor then asked for a specific punishment in rebuttal. *Id.* The Eastern District found the trial court did not commit reversible error in overruling the defendant's objection to the prosecutor's rebuttal, and in doing so, relied heavily on *Ross. Id.* at 866–67. We believe, however, the *Keely* court failed to recognize that the real essence of *Ross* was that defense counsel had himself argued the issue of punishment and, therefore, waived any objection. Moreover, the reasoning in *Keely* fails to recognize that the underlying principle of the rule is to evaluate the rebuttal argument in light of the opening argument in each case. Applying this type of analysis, it is completely improper to focus on the words spoken in each step of closing argument in isolation. When a court determines, as it did in *Keely,* that a prosecutor's closing argument is not improper because the opening portion of the argument is similar to the opening portion of a closing argument that was approved in some other case without considering how the opening portion of the argument relates to the second and final portions, it undermines the rule's purpose. *See State v. Strubberg,* 616 S.W.2d 809, 818 (Mo. banc 1981) (pointing out that the circumstances of each case are vital and precedents are of

minor value because of the differences among cases).

The preceding statement is in no way meant to imply a withdrawal from the guidelines established by our Supreme Court in *Peterson.* The problem with cases like *Keely,* however, is that they apply the guidelines as a test, which can lead to unintended results. In outlining the guidelines, the *Peterson* Court stated, "The point will, of course, be ruled in each case on its own peculiar facts, *including these issues* ..." 423 S.W.2d at 831 (emphasis added). The guidelines were not meant to be a strict test; they were meant to guide courts toward a resolution that serves the underlying purpose of the closing argument rule.

Our court addressed this closing issue in *State v. Burton.* 721 S.W.2d 58, 64 (Mo. App.1986) (*overruled on other grounds by State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997)). There, the defendant argued that the State was improperly allowed to argue for a specific length of imprisonment in rebuttal because the prosecutor did not argue for a specific sentence in the initial phase of his closing argument. *Id.* at 64. In the initial phase the prosecutor merely announced that he would return and discuss punishment in rebuttal. *Id.* True to his word, he argued for a sentence "consistent with the taking of human life and mentioned sentences from three years to life on the charge of armed criminal action and ten, twenty and one hundred years or '*whatever you see fit*' on the murder charge." *Id.*

The court analyzed *Hale* and *Maxie* and found the trial court did not abuse its discretion in allowing the argument because "no argument for a specific punishment was made and therefore no prejudice resulted." *Id.* at 65. The court concluded:

Had such an argument been undertaken in the second phase of the closing remarks to the jury by the state, it would have constituted error because *the mere statement earlier that punishment would subsequently be discussed was insufficient ground upon which the defendant could have replied to rebut a later claim for a specific sentence.*

*Id.* (emphasis added).

The State, however, cites to our later decision in *State v. Pena,* 784 S.W.2d 883, 888 (Mo.App.1990), which appears to cast some doubt on *Burton.* During the opening portion of closing argument, the prosecutor said that he needed to "throw in" the subject of punishment because he intended to come back in rebuttal and ask for a reasonable and meaningful punishment that would express the community's intolerance toward the type of crime involved. *Id.* In rebuttal the prosecutor asked for nothing less than a seven-year sentence, but also asked the jury to consider the maximum punishment of twenty years. *Id.* Relying on the Eastern District's decision in *Ross* and the Supreme Court's decision in *Brown,* we said in *Pena,* "This court is constrained to follow the *Brown* decision and therefore finds no error in allowing the prosecution to argue a specific number of years in closing argument." *Id.* at 889.

As discussed earlier in this opinion, we do not read *Brown* to stand for the proposition that the closing argument rule's sole purpose is to give notice to the defendant that the prosecution intends to take a position on punishment in rebuttal. Furthermore, the defendant in *Brown* waived any objection he may have had by arguing the issue of punishment himself. Our decision in *Pena* seems to be based on the same misinterpretation of *Brown* that the *Ross* court made.

Whether the rebuttal argument quoted from *Pena* actually states a position requesting a specific term of years might be arguable, but the *Pena* court characterized it as such an argument. Our misunderstanding of the closing argument rule in *Pena* is demonstrated by references to non-contextual quotes from *Ross* and *Brown,* which we conclude stand for the proposition that the prosecutor need not request a specific term of years in the opening portion of closing argument to be able to argue about punishment in the rebuttal portion. Such a proposition begs the question because the focus should be on the rebuttal, i.e. whether the prosecutor can request a specific term of years in rebuttal when he did not mention a specific term or at least talk about the need for punishment in light of the crime's severity during the opening portion of closing. To the extent *Pena* stands for the proposition that merely announcing an intent to argue punishment in the opening entitles the State to request or recommend a specific terms of years in rebuttal, it is in conflict with *Hale, Peterson,* and *Maxie* and should not be followed.

˙ Although the closing argument rule originated from the rule stated in *Shaw* that applies in civil cases, the two rules have developed on slightly divergent paths. In the civil arena, a corollary rule developed that prohibits a plaintiff from requesting a specific amount of damages in rebuttal unless such a request was made in the initial phase of closing argument. This rule, as discussed in *Tune* by the Supreme Court, is not subject to the trial court's discretion assuming that the defendant has not waived his objection in some manner. 883 S.W.2d at 20. In the civil line of cases, the conjunction of the two rules permits a plaintiff to make a general argument on the subject of damages in rebuttal if the subject was generally argued in the opening (or by defendant) but prohibits a plaintiff from requesting a specific amount of damages for the first time in rebuttal.

These two related rules make good sense in light of the clear purpose of the rebuttal portion of closing argument, which is to expand and amplify subjects addressed by the plaintiff and defendant in the first two portions of closing argument.

Although many cases, particularly criminal cases, have stated there can be no hard and fast rules regarding the control of closing argument, we think that full application of the corollary civil principles to criminal cases would more clearly guide prosecutors, defense counsel, and trial courts. And we see no impediment to their application in criminal cases by equating specific requests for an amount of damages with specific requests for a term of years for imprisonment. If the prosecutor does not request a specific punishment in the opening portion of closing, the defendant will know that the State is not going to take a specific position in rebuttal and will leave the issue to the jury. The defendant may then decide whether to address the punishment issue or not. Of course whether waiver occurred (for example by the defendant himself arguing about punishment or one of the other varied means of waiver) and whether the defendant suffered prejudice, would be evaluated in each case.

Where the state does not request a term of years in opening argument but, rather, mentions its position on punishment in various possible degrees of detail, the court, after considering possible waiver by the defendant, would have to exercise its discretion in determining whether the rebuttal argument was reasonably within the scope of the initial argument by the state or the position taken by the defendant in closing argument. The less detailed the state's discussion of punishment in opening, the less detailed argument would be permitted in rebuttal. *See Id.* at 18.

Such an approach to the closing argument rule also serves the underlying purpose of the rule, which is to allow the defendant an opportunity to respond to the state's argument, and fits in with the guidelines announced in *Peterson.* The guidelines essentially ask the court to evaluate the propriety of what was said in the final portion of closing argument by looking at how it relates to what was said in the first portion by the state and in the second portion by the defense. *See Peterson,* 423 S.W.2d at 831. The relationship between what was said in each stage of closing argument should be the focus of any analysis of the closing argument rule.

Here, the State said absolutely nothing about its position on the defendant's punishment during the opening portion of closing argument. The defendant had no way of knowing what the State's position would be in rebuttal and, therefore, had no way to respond to that position in its own closing argument. The defendant did not waive his objection in any manner. After objection, the trial court did not have the discretion to allow the prosecutor to request a specific term of imprisonment for the first time in rebuttal.

■ We still must consider the issue of prejudice, however. *Id.* The State first contends that no prejudice resulted from the argument because there was no evidence the defendant would have chosen to argue for a specific sentence rather than acquittal. The State cites no authority for this proposition. It could just as accurately be said that nothing in the record indicates the defendant wanted to put all of his eggs in the acquittal basket and would not have made some alternative argument to the jury if he had known the State wanted thirty years on each count. The point is that we can never know how the defendant would have responded to the State's position because the State did not disclose that position.

The State also argues that no prejudice resulted because the jury recommended

punishments less than those requested by the prosecutor. The Supreme Court in *Peterson* rejected an identical argument for the reason that it was impossible to know what sentence the jury would have decided upon if the closing argument had been proper. *Id.* at 830. In *State v. Wadlow*, 450 S.W.2d 200, 202 (Mo.1970), the Court also rejected a no-prejudice argument even when the jury recommended the *minimum* punishment where two offenses carrying lesser punishments were also submitted to the jury.

We hold that the State was improperly allowed to argue for a specific term of imprisonment for the first time in rebuttal argument, and the inherent prejudice in allowing the argument has not been overcome. The cause is reversed and remanded for a new trial.

PAUL M. SPINDEN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.